Argued October 14; affirmed December 22, 1936

# COUSINEAU *v.* COUSINEAU

(63 P. (2d) 897)

In Banc.

*W. O. Sims* and *Henry E. Collier,* both of Portland (Sims & Sims and Collier, Collier & Bernard, all of Portland, on the brief), for appellant.

*Ralph B. Herzog,* of Portland (Carey Martin, of Salem, on the brief), for respondent.

ROSSMAN, J. Omitting mention of non-essentials, the complaint alleges that in 1925 the plaintiff instituted an action for divorce against the defendant in the superior court of the state of California for the county of Los Angeles; that the defendant appeared personally; that on August 17, 1925, "there was entered in said action an interlocutory judgment of divorce, a substantially true copy of which is attached hereto * * *; that said final judgment of divorce was never appealed from, modified or reversed in any manner, and the same has become final * * *; that the minor child of the plaintiff and the defendant referred to in the above proceedings, to-wit, Mary Cousineau, is now 17 years of age; that under the laws of the state of California said minor child will not attain her majority until she reaches the age of 21 years." Further, the complaint alleges that the plaintiff is now a resident of the state of California; that the defendant is now a resident of our state; that the defendant paid to the plaintiff $100 per month to and including the month of April, 1927, but nothing since; that since April, 1927, and up to the time of the filing of the complaint in the present action (July 1, 1935) there accumulated upon the said judgment the sum of $9,800, no part of which has been paid.

The complaint prays "that said final judgment of divorce be established as a foreign decree, and that it be adjudged that there is now due and owing from defendant to plaintiff under the terms of said foreign decree the sum of $9,800; and the plaintiff prays for

such other and further relief as to the court may seem just and equitable." The material parts of the final judgment, according to the copy which accompanies the complaint, are: "Now on motion of plaintiff, it is adjudged that plaintiff be and is granted a final judgment of divorce from defendant * * *. It is further ordered and decreed that wherein said interlocutory decree makes any provision for alimony or the custody and support of children, said provision be and the same is hereby made binding on the parties * * *. It is further ordered and adjudged that the custody of the minor child, Mary Cousineau, be awarded the plaintiff; that the defendant pay the plaintiff for her support and maintenance, and the support, maintenance and education of the minor child, the sum of $100 a month, to be paid on or before the first day of each and every calendar month and continuing until such time as the plaintiff shall have re-married, after which time the defendant shall pay the sum of $50 a month for the support, maintenance and education of the minor child, Mary Cousineau, during her minority." The provision for maintenance and support in the interlocutory judgment was in language identical to the above.

As is indicated in the preceding statement, the demurrer charged that the complaint failed to state a cause of action and disclose jurisdiction over the subject matter. The decree of the circuit court granted judgment against the defendant for the sum of $9,800 "which sum the defendant shall forthwith pay to the plaintiff, and for the further sum of $100 per month from the first day of July, 1935, to the date of the entry of this decree, which further sum the defendant shall forthwith pay to the plaintiff; and the defendant is further ordered to pay to the plaintiff for her support and maintenance, and for the support, maintenance and

education of the minor child of the plaintiff and the defendant, Mary Cousineau, the sum of $100 per month.''

In support of his demurrer, the defendant argues that the complaint fails to show that the California judgment has become a final one, and then cites decisions which hold that the full faith and credit clause of the federal constitution demands that only the final judgments of the courts of one state are enforceable in the courts of another state. His citations are: *Levine v. Levine,* 95 Or. 94 (187 P. 609); *Levine v. Levine,* 121 Or. 44 (252 P. 972); *Rowe v. Rowe,* 76 Or. 491 (149 P. 533); and *Lynde v. Lynde,* 181 U. S. 183 (45 L. Ed. 810, 21 S. Ct. 555). In the case first cited, the action was based upon a Minnesota decree which awarded to the plaintiff the custody of the child of the parties, and provided that the defendant should pay to the plaintiff, $12.50 on October 20, 1913, and a like payment on the fifth and twentieth days of every month thereafter. The plaintiff sought judgment against the defendant for the sum of $1,300, alleging that that amount had accumulated in unpaid installments since the entry of the decree. The complaint pleaded the Minnesota law applicable to awards of support money which, according to our decision, reserved to the courts of that state "the power subsequently to modify the original decree even as to accrued installments." Therefore, our decision held that only the first installment, that is, the one payable October 20, 1913, had become final and was within the purview of the full faith and credit clause of the federal constitution. The second of the above-cited decisions brought the same parties and the same decree before this court again. In the second case it appeared that after the first decision had been announced, the plaintiff filed a petition in the Minnesota

courts praying for an adjudication of the amount of the installments then past due and unpaid, pursuant to which the court determined that $1,891 was due and unpaid to the plaintiff under its former decree. To her complaint which alleged these facts, the defendant interposed a demurrer which was sustained. The decision of this court reversed the decree of the circuit court and pointed out: "The facts alleged in the complaint are sufficient, if sustained by proof, to entitle plaintiff to recover judgment for the amount adjudicated by the Minnesota court." In *Rowe v. Rowe,* supra, we held invalid a judgment in favor of the plaintiff's former wife, based upon a California decree which purported to grant to the defendant monthly sums for the support of herself and the minor child of the parties. The findings of the circuit court held that the California decree was not a final one. The decision of this court in sustaining that finding, stated: "The decree of the California court as to the sums to be paid for the maintenance and support of the minor was not a final decree under the statutes of that state." The decision further pointed out that the California law reserved to the courts of that state the power "to vacate such order at any time."

*Lynde v. Lynde,* supra, should not be considered by itself, but with *Barber v. Barber,* 21 Howard 582 (16 L. Ed. 226), and *Sistare v. Sistare,* 218 U. S. 1 (54 L. Ed. 905, 30 S. Ct. 682, 28 L. R. A. (N. S.) 1068, 20 Ann. Cas. 1061). In the case last cited, the federal supreme court, in referring to the other two, said:

"When these two cases are considered together we think there is no inevitable and necessary conflict between them, and in any event if there be that Lynde v. Lynde must be restricted or qualified so as to cause it not to overrule the decision in the Barber case.

\* \* \* We think the conclusion is inevitable that the Lynde case cannot be held to have overruled the Barber case, and therefore that the two cases must be interpreted in harmony, one with the other, and that on so doing it results: First, that, generally speaking, where a decree is rendered for alimony and is made payable in future installments the right to such installments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments, since, as declared in the Barber case, 'alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is.' Second, that this general rule, however, does not obtain where by the law of the State in which a judgment for future alimony is rendered the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the installments ordered by the decree to be paid, even though no application to annul or modify the decree in respect to alimony had been made prior to the installments becoming due.''

Nothing contained in the above decisions indicates that the California judgment was not a final one. The defendant seems to believe that the plaintiff should have alleged the provisions of the California law concerning the award of alimony and of maintenance money so that we could determine from those sources whether the California law reserved to the courts of that state power to modify this decree retroactively as well as prospectively. The complaint does not disclose the provisions of the California law except to aver that the judgment under consideration is a final one. If we are not justified in taking judicial notice of the California law, we are warranted in presuming that it is the

same as the law of Oregon: *Re Application of Ashley,* 113 Or. 43 (231 P. 153); Wigmore on Evidence (2d Ed.), § 2536. And this presumption of similarity includes the California statutory law as well as the state's common law: *Garetson Lumber Co. v. Hinson,* 69 Or. 605 (140 P. 633), and *Casner v. Hoskins,* 64 Or. 254 (128 P. 841, 130 P. 55). The presumption of similarity, as indicated in the above-cited section of Wigmore on Evidence, is nothing more than a rule of procedure which for practical purposes places upon the party who claims dissimilarity the burden of making the charge and of coming forth with proof.

Prior to 1921 a decree of an Oregon court awarding alimony or support money was not final and could be modified, not only as to future installments but also as to installments which had already accrued. The element of *res adjudicata* as to those matters was not present: *Mason v. Mason,* 148 Or. 34 (34 P. (2d) 328). See, however, *Holton v. Holton,* 153 Minn. 346 (190 N. W. 542, 41 A. L. R. 1415). But 1921 Session Laws, chapter 114, which is now a part of section 6-915, Oregon Code 1930, after recognizing the power of our courts to set aside or modify decrees "for the care and custody of minor children or the nurture and/or education thereof on the maintenance of either party to the suit" expressly provides:

"Such decree shall be a final judgment as to any installment or payments of money provided for therein which have accrued up to the time either party shall move the court to set aside, alter or modify the same; * * * the court shall not have the power to set aside, alter or modify such decree or any portion thereof which may provide for the payments of money, either for the nurture or education of minor children or the maintenance of either party to the suit, which have accrued prior to the filing of such motion."

Since the enactment of that statute this court has held that accrued installments have finality, and that their payment may be enforced by a writ of execution: *Forbes v. Jennings,* 124 Or. 497 (264 P. 856). The presumption of similarity stated in the preceding sentence authorizes us, therefore, to presume that the law of California protects against modification all installments of alimony and support money that have accrued upon the judgment described in the complaint. Such, in fact, is the California law as announced by its courts: *Keck v. Keck,* 219 Cal. 316 (26 P. (2d) 300); *Cummings v. Cummings,* 97 Cal. App. 144 (275 P. 245); *Parker v. Parker,* 203 Cal. 787 (266 P. 283).

But it is our belief that, under the circumstances of this suit, it is the duty of the Oregon courts to take judicial notice of the matters stated in the preceding paragraph. We reiterate that this is a suit which is predicated upon a foreign judgment within the purview of the full faith and credit clause. Since the federal constitution requires that full faith and credit be given in each state to the judicial proceedings of every other state, it is our duty to know judicially that the superior court of the state of California had jurisdiction of the subject matter of the divorce suit between the plaintiff and the defendant, as expressed in the constitution of California, Art. VI, § 5, and Deering's Code of Civil Procedure and Probate Law of California (1931), § 76, with power to award alimony and support money: Deering's Civil Code of California (1931), §§ 137, 138 and 139. We quote from *Trowbridge v. Spinning,* 23 Wash. 48 (62 P. 125, 83 Am. St. Rep. 806, 54 L. R. A. 204):

"Where a question arises under that part of the Constitution of the United States and the act of Congress which requires full faith and credit to be given

in each state to the public acts, records, and judicial proceedings of every other state, our courts will take judicial notice of the local laws of the state from which the record comes. Ohio v. Hinchman, 27 Pa. 483; Paine v. Schenectady Ins. Co., 11 R. I. 415; Rae v. Hulbert, 17 Ill. 576.''

It is, therefore, clear that, since the California judgment is a final adjudication concerning all unpaid alimony and support money, the circuit court did not err when it granted the plaintiff judgment against the defendant for the total amount unpaid. But the question remains whether the circuit court was authorized to regard the defendant's duty, as expressed in the California judgment, in the same manner as the California court had regarded it; that is, whether it was authorized to require the defendant not only to discharge the overdue payments but also the future ones as they accrued, and render available to the plaintiff the remedies of a court of equity for their enforcement.

In the much-cited decision entitled *Fanchier v. Gammill,* 148 Miss. 723 (114 So. 813), the facts before the court were substantially similar to those before us. The court there held that the former wife, to whom a decree of divorce and alimony had been awarded by a Nevada court, was entitled to have established in Mississippi the Nevada decree so that there would be available to her the powers of Mississippi equity courts for its enforcement. We quote from the decision the following:

''It is our view that, on account of the character of a judgment for alimony, which rests, to some extent, upon public policy, in requiring a husband to support his wife and children, due to the sacred human relationship, and that they may not become public charges and derelicts, the decree for alimony, with the extraordinary power of enforcement by attachment and contempt pro-

ceedings, should be established and enforced by our equity court, which has full and sole jurisdiction of all matters of divorce and alimony; because to hold that a foreign judgment for alimony can be enforced in this state only by execution, the same as judgments at law, would be to impair or to deprive a foreign judgment for alimony of its inherent power of enforcement by attachment and contempt proceedings. Thus, as we view it, to so hold would be to disregard the 'full faith and credit' clause of the federal law, which we interpret to mean that the judgment, with its peculiar right of enforcement, as one for alimony, should be established and enforced by the equity courts of our state in the same manner, and to the same extent, as it could have been enforced by our court if originally obtained in our state.

"A judgment or decree for alimony carries with it a special power and right of enforcement not given in judgments at law. There is a difference between a judgment for money or property and that of a decree for alimony; and the decree for alimony, because of such difference in the character of the obligation, may be enforced by more efficient and effective means than those given to the enforcement of judgments at law. Why should this extraordinary right of enforcement, due to the character of the judgment, be destroyed and annulled in its power, when it is attempted to be established and enforced in our state upon a decree rendered in a foreign state? An insolvent husband would become immune from the alimony decree if such was the law. It would amount to a partial sterilization of the force of the judgment for alimony."

In the decision from which we have just quoted the court cited *Barber v. Barber,* supra. That decision by the United States supreme court contains much that lends support to the Mississippi decision. Briefly stated, the facts in *Barber v. Barber* were: In 1847 the court of chancery of New York granted Huldah B. Barber a separation from Hiram Barber, and directed the pay-

ment of alimony quarterly. The order reserved power to the court for its future modification upon application of the parties, and provided that unpaid installments should draw interest "and that execution might issue therefor *toties quoties*." The husband failed to pay any of the alimony and moved to Wisconsin where he procured an absolute divorce. Later, Mrs. Barber brought a suit in equity in the federal district court to recover the overdue alimony. The suit culminated in a decree in her favor for the amount of alimony in arrears at the commencement of the suit. The cause then made its way to the United States supreme court where the decree just mentioned was affirmed. We quote from the decision:

"There is, too, another ground of jurisdiction in equity, just as certainly established as that is of which we have just spoken. It comprehends the case before us. It is, that courts of equity will interfere to compel the payment of alimony which has been decreed to a wife by the ecclesiastical court in England.

"Such a jurisdiction is ancient there, and the principal reason for its exercise is equally applicable to the courts of equity in the United States. It is, that when a court of competent jurisdiction over the subject-matter and the parties, decrees a divorce, and alimony to the wife as its incident, and is unable of itself to enforce the decree summarily upon the husband, that courts of equity will interfere to prevent the decree from being defeated by fraud. The interference, however, is limited to cases in which alimony has been decreed; then only to the extent of what is due, and always to cases in which no appeal is pending from the decree for the divorce or for alimony. * * *

"The parties to a cause for divorce and for alimony are as much bound by a decree for both, which has been given by one of our state courts having jurisdiction of the subject-matter and over the parties, as the same parties would be if the decree had been given in the

Ecclesiastical Court of England. The decree in both is a judgment of record, and will be received as such by other courts. And such a judgment or decree, rendered in any State of the United States, the court having jurisdiction, will be carried into judgment in any other State, to have there the same binding force that it has in the State in which it was originally given. For such a purpose, both the Equity Courts of the United States and the same courts of the States have jurisdiction. * * *

"We have already shown, by many authorities, that courts of equity have a jurisdiction to interefere to enforce a decree for alimony, and by cases decided by this court; that the jurisdiction of the Courts of Equity of the United States is the same as that of England, whence it is derived. On that score alone, the jurisdiction of the court in the case before us cannot be successfully denied. * * *"

In *Ostrander v. Ostrander*, 190 Minn. 547 (252 N. W. 449), the facts were: Mamie Ostrander, the plaintiff, on December 19, 1929, secured a decree of divorce from the defendant in the courts of South Dakota, which ordered him to pay the plaintiff for life $75 monthly as permanent alimony. Later, the parties moved to Minnesota. Since February, 1931, the defendant failed to discharge the monthly payments, and July 18, 1932, there was due upon the decree $1,350. The plaintiff then instituted the Minnesota suit for the purpose, according to the decision above cited, "not to recover that amount, as a debt by ordinary judgment and execution, but to compel its payment through whatever power our courts may have on the equity side, to resort to sequestration, receivership, or even contempt proceedings against defendant." In holding that the lower court properly granted her the relief she sought, the Minnesota supreme court said:

"Upon the facts found here, this action 'belongs to a class where the remedy at law is ordinarily adequate,'

but ineffective because of particular circumstances. McClintock, 'Adequacy of Ineffective Remedy at Law,' 16 Minn. L. Rev. 233. We agree with the conclusion of the learned author 'that both by the weight of authority and on principle, a remedy at law which is practically ineffective is not an adequate remedy.' Overmire v. Haworth, 48 Minn. 372, 51 N. W. 121, 31 Am. St. Rep. 660; Schmitt v. Cassilius, 31 Minn. 7, 16 N. W. 453; Fryberger v. Berven, 88 Minn. 311, 92 N. W. 1125. * * *

"Because of the nature of defendant's obligation and its origin, the enforcement of his duty is as much in need of attention by sovereign power as though he had remained in South Dakota. Transplantation of the parties from one state to another has not reduced the obligation to the ordinary category of 'a debt of record.' Contra, Freeman on Judgments, § 1447. Migration of the parties across a state line has wrought no change in the nature and basis of the obligation. Its purpose remains the payment of alimony needed for the support of a former wife and the child of herself and her debtor. To the ordinary mind, untroubled by legal nuances, the money due from defendant remains alimony wherever they or either may be. We prefer that nontechnical view which regards the substance of the matter as unchanged by mere removal of the debtor across a state line. * * * But we decline debate as to how little we can do for plaintiff and yet comply with the full faith and credit mandate. In view of her plain right, and the need for its enforcement, not only in justice to her and her child, but also to vindicate our system of interstate comity, we prefer only to inquire whether our district court has adequate power to give plaintiff the remedy which the nature of her claim commends as just. * * *"

If comity is the basis of the full faith and credit requirement, the decisions of our neighboring states ought to be peculiarly persuasive, and we should endeavor to do as much for our neighbors as their courts stand prepared to do for the people of this state. In *Shibley*

*v. Shibley,* 181 Wash. 166 (42 P. (2d) 446, 97 A. L. R. 1191), the facts were: The plaintiff, in August, 1929, secured a decree in the California courts which ordered the defendant, her husband, to pay her $500 per month for the maintenance of herself and their minor children. In 1931 the monthly payments were reduced to $400. After March 1, 1932, the husband made no payments. The Washington complaint, which averred the above, sought, according to the decision under review, "judgment for the amount already due and owing under the modified decree, and also prays that the judgment of the California court be established here as a foreign judgment to be enforced in equity, by contempt proceedings, if necessary, as is usual in such cases." In reversing the decision of the lower court which had dismissed the action, the supreme court of Washington said:

"Plaintiff is entitled to recover in this case for the amount already accrued and due according to the allegations of her complaint, the judgment to provide for its enforcement as a judgment or decree in equity. We adopt this procedure, not on account of the rule of comity enjoined by the full faith and credit clause of the Federal Constitution, but because, as a matter of public concern and equitable power, the enforcement in this state of such decrees for alimony and support money should not depend solely upon ordinary execution, but that the common practice in this state with respect to all the remedies for the enforcement of such decrees as if originally entered here should be followed and enforced."

In *Creager v. Superior Court of Santa Clara County,* 126 Cal. App. 280 (14 P. (2d) 552), the facts were that the parties were divorced by a Nevada decree in 1931 which ordered the husband to pay $30 a month alimony. Later, the ex-wife instituted an action in the respondent

court to enforce the Nevada decree in which she alleged the amounts due, and prayed that "said judgment be established as a foreign judgment." The ex-husband (petitioner) defaulted and the prayer was granted. Later, the respondent court ordered petitioner to show cause why he should not be adjudged guilty of a contempt for failing to comply with its decree above described. He then sought a writ of prohibition which was discharged and the petition denied in the decision under review. The court quoted with approval from *Franchier v. Gammill,* supra, and declared:

"For the purpose of enforcement in this state, we believe that the respondent court properly treated its own judgment, based upon and establishing the Nevada judgment, in the same manner as an original award of alimony by the respondent court."

In *Cummings v. Cummings,* 97 Cal. App. 144 (275 P. 245), Lulu Cummings brought an action against Frank Cummings, her husband, on a New York judgment which granted the wife $65 per week for the support of herself and her two children. From a judgment for the plaintiff, the defendant appealed. From the decision the following is taken:

"The judgment of the trial court was for a sum equal to the amount due under the New York judgment, including all installments down to the entry of the judgment, and for $65.00 per week thereafter, but only so long as the decree of the New York court remains unmodified, leave being granted to apply for a modification if the New York court modifies its decree, and restrained the defendant from transferring, assigning, or otherwise disposing of the money in Arizona except to apply the same on the payment of the judgment, and other proper equitable relief.   *   *   *

"While the question seems to be a new one in this state, yet there is respectable authority in other states to support the doctrine that a judgment for alimony of

a sister state may be enforced in the same manner that it could have been enforced if originally obtained here.
\* \* \*

"This is the only question raised by appellant against the plaintiff's second cause of action, and it is without merit.

"The trial court, in an obvious effort to protect defendant in case of subsequent modification of the New York decree, required defendant to pay future installments only so long as the New York decree remains unchanged. If the New York court modifies its decree the judgment of the trial court grants permission to apply for a similar modification. This safeguard was unnecessary, but, as it was wholly in favor of defendant, we do not see how he may well complain of it."

A petition for a hearing was later denied by the California supreme court, from which circumstance we may assume that the supreme court found no error in the appellate court's decision.

*Weidman v. Weidman,* 274 Mass. 118 (174 N. E. 206, 76 A. L. R. 1359), and *Mayer v. Mayer,* 154 Mich. 386 (117 N. W. 890, 19 L. R. A. (N. S.) 245, 129 Am. St. Rep. 477), refused to yield to the foreign decree the powers of a court of equity for its enforcement. In the Weidman case the court pointed out that the relief which the plaintiff had obtained in the sister state (New York) was not available to anyone in Massachusetts, and that the full faith and credit clause did not require Massachusetts to provide a court for the benefit of those who had won rights in other states which were unknown to Massachusetts law. The reasoning of the Michigan decision was not as fully developed as that of the Massachusetts case, but proceeded upon substantially the same premise.

Section 9-623, Oregon Code 1930, provides:

"The effect of a judicial record of a sister state is the same in this state as in the state where it was

made, except that it can only be enforced here by an action, suit or proceeding.''

We are impressed with the reasoning of the Mississippi, California and Washington decisions. The public policy of this state has no sympathy for those who seek to shirk the duty imposed by decrees directing the payment of support money. The origin of plaintiff's claim was not a mere money transaction for, according to Restatement of the Law of Conflict of Laws, § 462, ''the duty to pay alimony is imposed as a phase of the duty of support.'' In *Forbes v. Jennings,* supra, Mr. Justice McBride declared:

''While the statutes concerning divorce may legally free parties to such proceedings from any financial or other obligation to each other, the duty of a father to support and care for his helpless minor offspring is a moral duty that inheres in the law of nature, and is enjoined by the law of God.''

The defendant's duty was not diminished in any manner when he chose to come to our state, and, since both Washington and California are prepared to enforce the decrees of this state in exactly the same manner as we would do ourselves, we ought not to make our state a safe haven for those who seek to evade duties imposed upon them by the decrees of our neighboring states unless there is no escape from such an unhappy task. Fortunately our neighbors, as well as Mississippi, have shown the way. We do not enforce the California decree, as such, in this state, but regard it as the basis for an Oregon decree having the same effect in this state as the California decree has in that state. Our laws authorize us so to do, for if there is anything novel or unusual about this proceeding—and the Massachusetts and Michigan courts seemed to think so—sec-

tion 28-1715, Oregon Code 1930, authorizes us to go ahead. That section of our laws provides:

"When jurisdiction is, by the organic law of this state, or by this Code or any other statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this Code, and suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

In Oregon contempt proceedings are the common means employed for the enforcement of awards of alimony and support money. The same is true in California. See 1 Cal. Jurisprudence, § 105, p. 1057. In our opinion, the circuit court properly deemed the judgment or, as it is called in this state, decree, the basis for an Oregon decree imposing upon the defendant a duty similar to that of the California decree. Whenever the California decree is modified, a similar modification will at once be made in the Oregon decree.

It follows that the decree from which the appeal has been taken will be affirmed.

CAMPBELL, C. J., KELLY, BEAN and BAILEY, JJ., concur.

RAND and BELT, JJ., not participating.