THONES *v.* THONES.

(*Nashville*, December Term, 1946.)

Opinion filed June 26, 1947.

KING, KING & LAUGHLIN and CARUTHERS EWING, JR., all of Memphis, for appellant.

BEN W. KOHN, of Memphis, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The sole question for determination on this appeal is whether a foreign judgment for alimony which the husband has not paid after becoming due is enforceable in this state by contempt proceedings to the same extent as if such judgment had been originally rendered in this state, or whether such accrued unpaid alimony will in this state be treated merely as a debt collectible solely by execution when reduced to a money judgment.

The question is conceded to be one of first impression in this court, and arises upon the following facts: In 1933 the Superior Court of Fulton County, Georgia, which court had jurisdiction of the person and of the subject matter of the litigants, granted Mrs. Edith M. Thones a divorce from W. H. Thones, and this decree ordered him to pay her alimony of $50 per month. He came to Tennessee and, disregarding the judgment and order of the Georgia Court, has made no payment thereon to Mrs. Thones since July of 1936. He has no visible property subject to execution, and has arranged with his employer to pay his salary in advance. The result is that garnishment is totally ineffective. Mrs. Thones, who is a resident of Florida, sued in the Chancery Court of Shelby County for a money judgment against Thones for all install-

ments of alimony accrued since July, 1936, and for such general relief "to which she may be entitled under and by virtue of the premises." An alimony award by a Georgia Court is enforceable in Georgia by contempt proceedings.

The chancellor awarded Mrs. Thones a money decree for all installments of alimony accrued since July, 1936, together with interest thereon, or a total money judgment of $7,800, but declined the insistence of Mrs. Thones to enforce or attempt to enforce collection of this judgment or any part thereof by contempt proceedings. The chancellor, in refusing to issue an attachment for contempt, said "this is an open question in this state" and "this court will not do so until such time as the policy of the state shall have been declared by the Supreme Court." Mrs. Thones' appeal is directed only to this question.

The courts of the various sister states wherein the question has arisen disagree in their respective conclusions. A number of such courts hold that alimony due under a decree of a foreign court is merely a debt collectible only by execution upon a judgment recovered locally upon such foreign judgment. Among the jurisdictions so holding are Massachusetts, Michigan, New Jersey and New York. The reasoning of these cases is that the full faith and credit clause of the Federal Constitution, Art. 4, sec. 1, has no reference to the method of or remedy for enforcement of a foreign judgment, and that the mere circumstance of the parties being husband and wife is no ground for relief by extraordinary process. Others of these cases place their conclusions upon the ground that the power to enforce alimony awards is purely statutory, and that such statutes have no extraterritorial operation, and hence could not be brought over into another state. Those courts which

take the position that such foreign judgments will not be enforced by the equitable remedy of contempt, etc., probably represent the majority view of our sister jurisdictions.

Other jurisdictions wherein the question has been determined hold that a foreign unpaid judgment for alimony is enforceable in a sister state in the same manner and to the same extent that a local judgment for alimony is enforceable in such state, and is entitled to all the equitable remedies of the local court to the same extent as if the decree had been rendered in that court. In all of these cases, the law of the foreign jurisdiction rendering the original alimony decree permitted enforcement of collection by contempt proceedings. Among the courts taking this view of the matter are those of California, Minnesota, Mississippi, Florida and Kentucky. The courts which take this view of the question predicate their conclusions either upon their interpretation of the full faith and credit clause of the Federal Constitution, or by reason of comity between the states, or as a matter of public policy, or for all of these reasons. It is said in these cases that a decree for alimony represents more than a debt, that under the common law and by reason of the inherent power of equity such decree is enforceable by equitable remedies such as attachment for contempt, etc., and that the denial by a sister state of the enforcement of such foreign judgment by such means amounts to a failure in fact to give full faith and credit to the foreign judgment. These courts take the position that the obligation of the husband to support his wife is a matter of public concern, no matter where the decree for alimony is rendered, and that removal from one state to another has not reduced the obligation to the ordinary category of a money judgment, since such removal has wrought no change in the nature or basis of the obliga-

tion no matter "where they or either may be," *Ostrander* v. *Ostrander*, 190 Minn. 547, 252 N. W. 449, 450; and that the support of these dependents is necessary in the interest of society, and in response to the requirements of justice, whether the husband is in the state where he was originally ordered to pay alimony, or whether, in seeking escape from this moral and legal obligation, he has fled or gone to another state.

A number of decisions of our various states adjudicating the respective conflicting views of the question are collected in *Shibley* v. *Shibley*, 181 Wash. 166, 42 P. (2d) 446, 97 A. L. R. commencing at page 1191 and in *Cousineau* v. *Cousineau*, 155 Or. 184, 63 P. (2d) 897, 109 A. L. R. commencing at page 643. Commenting upon the recent trend of the courts on the question, the annotator in 109 A. L. R., at page 653 says "the inclination of the courts is towards granting equitable remedies in such cases" and that "the better considered recent cases adhere to the view" of granting equitable relief, such as contempt proceedings under such circumstances. In the California case of *Thomas* v. *Thomas*, 14 Cal. (2d) 355, 94 P. (2d) 810, 812, the court, adhering to the minority view of the question said that there is "now no question but that the better considered recent cases adhere to the view that a local judgment based on a foreign decree of alimony will be enforced by equitable remedies as by contempt." In the Kentucky case of *Glanton* v. *Renner*, 285 Ky. 808, 149 S. W. (2d) 748, the court in adhering to the minority view likewise observed that the recent trend of the courts is to invoke the equitable remedies of contempt, etc. In that case the complainant wife was not a resident of Kentucky.

Perhaps one of the leading cases adhering to the granting of extraordinary relief in the enforcement of such decrees is the well considered Mississippi case of

*Fanchier* v. *Gammill*, 148 Miss. 723, 114 So. 813, 814. In that case the court said: "A judgment or decree for alimony carries with it a special power and right of enforcement not given in judgments at law. There is a difference between a judgment for money or property and that of a decree for alimony; and the decree for alimony, because of such difference in the character of the obligation, may be enforced by more efficient and effective means than those given to the enforcement of judgments at law. Why should this extraordinary right of enforcement, due to the character of the judgment, be destroyed and annulled in its power, when it is attempted to be established and enforced in our state upon a decree rendered in a foreign state? An insolvent husband would become immune from the alimony decree if such was the law. It would amount to a partial sterilization of the force of the judgment for alimony."

Another well considered case is that of *Cousineau* v. *Cousineau*, 155 Or. 184, 63 P. (2d) 897, 904, 109 A. L. R. 643. In that case the court said: "The public policy of this state has no sympathy for those who seek to shirk the duty imposed by decrees directing the payment of support money. The origin of plaintiff's claim was not a mere money transaction for, according to Restatement of the Law of Conflict of Laws, sec. 462, 'the duty to pay alimony is imposed as a phase of the duty of support.' In *Forbes* v. *Jennings, supra,* [124 Or. 497, 264 P. 856], Mr. Justice McBRIDGE declared: 'While the statutes concerning divorce may legally free parties to such proceedings from any financial or other obligation to each other, the duty of a father to support and care for his helpless minor offspring is a moral duty that adheres in the law of nature, and is enjoined by the law of God.' The defendant's duty was not diminished in any manner when he chose to come to our state, and,

since both Washington and California are prepared to enforce the decrees of this state in exactly the same manner as we would do ourselves, we ought not to make our state a safe haven for those who seek to evade duties imposed upon them by the decrees of our neighboring states unless there is no escape from such an unhappy task."

In the Minnesota case of *Ostrander* v. *Ostrander* heretofore cited the court said: "Migration of the parties across a state line has wrought no change in the nature and basis of the obligation. Its purpose remains the payment of alimony needed for the support of a former wife and the child of herself and her debtor. To the ordinary mind, untroubled by legal nuances, the money due from defendant remains alimony wherever they or either may be. We prefer that nontechnical view which regards the substance of the matter as unchanged by mere removal of the debtor across a state line. . . . But we decline debates as to how little we can do for plaintiff and yet comply with the full faith and credit mandate. In view of her plain right, and the need for its enforcement, not only in justice to her and her child, but also to vindicate our system of interstate comity, we prefer only to inquire whether our district court has adequate power to give plaintiff the remedy which the nature of her claim commends as just."

We are of the opinion that it is not consistent with sound public policy and justice to refuse to enforce in this state alimony judgments of a sister state by the equitable remedy of sequestration or attachment for contempt, etc., to the same extent as we enforce such judgments when originally rendered in our own courts; provided, of course, this foreign judgment is enforceable by these equitable remedies in the state which originally rendered such judgment. In our case of *Brown* v. *Brown*, 156

Tenn. 619, 4 S. W. (2d) 345, 347, the court quoted with approval the comment of the *South Carolina Court, State* v. *English,* 101 S. C. 304, 85 S. E. 721, L. R. A. 1915F, 977, that imprisonment for contempt in such cases "is for the husband's failure to obey society's law, made for society's subsistence." In our case of *Toncray* v. *Toncray,* 123 Tenn. 476, at page 482, 131 S. W. 977, at page 978, 34 L. R. A. (N. S.) 1106, Ann. Cas. 1912C, 284, this court said: "Respecting foreign divorces, we think each state should adopt such course as seems most likely to promote the happiness and welfare of its citizens, consistent with a due regard for comity and good morals." In that case this court held that "it thus appears that there is, under our statute, no absolute connection between divorce and alimony. As our courts can decree the one without the other, so, upon principle, we could enforce a foreign decree as to one, and not as to the other." Our statute, Code, section 8448 provides that our courts may enforce their orders and decrees for alimony in such manner according to the course and practice of the court as "shall seem meet and agreeable to equity and good conscience."

██ It remains only to test the facts of the instant case by the principles declared in the above statute and the decisions of this and of our sister states. Mr. Thones has voluntarily removed himself to Tennessee, and here deliberately, in so far as the record before us discloses, violates and continues to violate that law which this court has defined as "society's law, made for society's subsistence." In order to the better escape his legal and moral duty within the premises he arranges to have his salary paid in advance, so as to place it beyond the reach of garnishment. His tangible property, if any, is not to be found. His former wife to whom he owes this legal and moral duty to pay this support is, therefore, without

adequate remedy at law. In fact, she is without any remedy at law. So, because he is voluntarily residing in Tennessee, she comes into our court of equity, seeking equitable relief. Since he is in Tennessee, there is no where else for her to go. In resistence to her efforts for relief, Mr. Thones says in substance to our court of equity that although his conduct is denounced by our laws as against sound public policy and justice, and contrary to its concept of good morals and in defiance of society's law, nevertheless that we are without power to aid her through the instrumentality of those equitable remedies with which we enforce our own decrees for alimony. We do not agree. We apply equitable remedies to the enforcement of an alimony decree because the obligation of a husband to support his wife is a matter of public concern. No matter where the decree for alimony is rendered, the enforcement thereof is just as necessary in the interest of society, whether the husband is in the state where he was originally ordered to pay alimony, or whether he has fled or gone to another state. As said by the Mississippi Court in the *Fanchier Case*, to hold as insisted by appellee here, "would amount to a partial sterilization of the force of the judgment for alimony," and, in our view, would be inconsistent at least with the spirit of the full faith and credit clause of the Federal Constitution, as well as the rule of comity between the sister states. Further, the declared public policy of this state is to punish by contempt husbands who through wilful disobedience or obstinacy refuse to comply with a court order to pay alimony. *Clark* v. *Clark*, 152 Tenn. 431, at page 440, 278 S. W. 65. The fact that the order is made by the court of a sister state is no reason, in our opinion, to exclude such defaulting husbands when they elect to live within our borders. As said by the Oregon Court in the *Cousineau Case*, we will not permit our state

to become a safe haven for those seeking to evade this high legal and moral duty. We have held that we do have the authority to enforce a foreign decree for alimony. *Toncray* v. *Toncray, supra.* The policy of our state as declared by statute is that we shall enforce alimony decrees in such manner as "shall seem meet and agreeable to equity and good conscience." Equity and good conscience require the application of the equitable remedy of contempt to prevent a wilful and obstinate violation of "society's law made for society's subsistence" and as a matter of justice to the wife who was without fault and to whom this legal and moral duty is owed.

Consistent with the views above declared, we hold that the judgment of $7,800 rendered in this cause against the appellee, W. H. Thones, is enforceable in this state by contempt proceedings to the same extent as if such judgment had been originally rendered by a court of this state. The decree of the chancellor is, accordingly, so modified. The cause is remanded for such further or appropriate proceedings as may be required in accordance with this opinion. The appellee, W. H. Thones, will pay the costs of this appeal.

All concur.