Evelyn Diane RASNIC, Plaintiff-Appellant, Counter-Appellee,

v.

Richard Reeves WYNN, Defendant-Appellee, Counter-Appellant.

Court of Appeals of Tennessee, Eastern Section.

Sept. 18, 1981.

Permission to Appeal Denied by Supreme Court Nov. 30, 1981.

R. M. Child, Child, O'Connor & Petty, Knoxville, for plaintiff-appellant, counter-appellee.

W. P. Boone Dougherty, Lockridge, Dougherty & Becker, P. C., Knoxville, for defendant-appellee, counter-appellant.

1. *T.C.A.,* § 26–6–103.—*"Foreign judgment" defined.*—As used in this chapter, "foreign judgment" means any judgment, decree, or or-

## OPINION

FRANKS, Judge.

The principal issue on appeal is whether child support payments provided in a Texas divorce decree is a "foreign judgment" [1] enforceable under the Uniform Enforcement of Foreign Judgments Act.

Defendant insists Tennessee courts have no jurisdiction to enter judgment for arrearages in child support since arrearages are subject to modification and are not final judgments entitled to full faith and credit and to be enforced under UEFJA.

The parties were divorced in Texas in 1972. The divorce decree incorporated a property settlement requiring defendant to pay $1,250.00 per month in support of the parties' two minor children. Defendant soon fell in arrears in child support payments and has continued in arrears to the present. No attempt has been made to collect the unpaid child support in the Texas courts.

The parties and their two children presently reside in Knoxville and have for the past several years. This suit was filed on January 8, 1980, to collect the unpaid child support ordered in the Texas judgment. Following an evidentiary hearing, the chancellor entered judgment on behalf of the plaintiff for $71,100.00 based upon the obligations created by the Texas judgment.

Defendant argues the Texas decree is not entitled to full faith and credit in this state and cites the case of *Overman v. Overman,* 514 S.W.2d 625 (Mo.App.1974), as authority for the position that Tennessee courts have no jurisdiction under the Uniform Act to enforce the Texas decree because, due to its modifiability, it is not entitled to full faith and credit. In *Overman,* the Missouri Court of Appeals refused to enforce a Tennessee support decree under UEFJA because Tennessee courts may retroactively modify or forgive amounts accruing under support decrees.

der of a court of the United States or of any other court which is entitled to full faith and credit in this state.

The *Overman* case is in accord with the principle established by the United States Supreme Court in the case of *Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1909), that a judgment of accrued child support is not entitled to full faith and credit if the court originally rendering that judgment has the discretion to reduce or forgive amounts which have accrued, since finality is one of the substantive requirements to entitle a judgment to full faith and credit. State courts,[2] including Tennessee, considering this issue have adhered to this view. *Barber v. Barber*, 180 Tenn. 353, 175 S.W.2d 324 (1943).

■ The *Overman* court correctly observed that Tennessee support decrees and accrued arrearages can be modified or forgiven but the *Overman* case is distinguishable from the case *sub judice.* Texas courts do not have the discretion to modify or forgive accrued arrearages for child support. *Texas Family Code Annotated*, § 14.-08(c)(2), provides:

> [A]n order providing for the support of a child may be modified *only as to obligations accruing subsequent to the motion to modify.* [Emphasis supplied.]

■ Defendant also cites the case of *Casterline v. Burden*, 560 S.W.2d 499 (Tex. Civ.App.1977), for the proposition the Texas courts have the ability to retroactively modify support arrearages. A careful analysis of this case establishes the only "retroactive" modification possible is the amount of child support accruing after a motion to modify has been made and before an order dispositive of the motion is entered by the court. Since no action to modify has been filed in the Texas court, the Texas judgment is final, entitled to full faith and credit and enforceable under Uniform Enforcement of Foreign Judgments Act.

■ We observe before leaving this issue that the courts of this state may, without regard to comity or the full faith and credit clause of the Federal Constitution, enforce foreign judgments for alimony or child support and it is the state's public policy to enforce such judgments. In *Thones v. Thones*, 185 Tenn. 124, 203 S.W.2d 597 (1947), our Supreme Court said:

> [I]t is not consistent with sound public policy and justice to refuse to enforce in this state alimony judgments of a sister state by the equitable remedy of sequestration or attachment for contempt, etc., to the same extent as we enforce such judgments when originally reduced in our own courts; provided, of course, this foreign judgment is enforceable by these equitable remedies in the state which originally rendered such judgment. 203 S.W.2d at 599–60.

This policy of enforcement was extended to child support arrearages in *Hester v. Hester*, 59 Tenn.App. 613, 443 S.W.2d 28 (1968).

■ Defendant raises a factual issue, insisting plaintiff agreed to reduce the child support to $250.00 per month in 1976. Negotiations to reduce or modify the child support payments occurred between an attorney for defendant and two attorneys at different times on behalf of plaintiff. The chancellor concluded the parties intended any agreement reached would be reduced to writing and, since no written agreement was signed by the plaintiff, there was no agreement to reduce support payments. The evidence does not preponderate against the chancellor's determination. T.R.A.P., Rule 13(d). The chancellor further held the doctrine of estoppel to be inapplicable because defendant had shown no prejudice based upon any representations made by one of plaintiff's attorneys, her brother.

2. *Williamson v. Williamson*, 247 Ga. 260, 275 S.E.2d 42 (1981); *Griffin v. Avery*, 424 A.2d 175 (N.H.1980); *Gruber v. Wallner*, 598 P.2d 135 (Colo.1979); *Windham v. Blakeney*, 354 So.2d 786 (Miss.1978); *McLeod v. Sandy Island Corporation*, 195 S.E.2d 178 (S.C.1973); *Hicks v. Hefner*, 210 Kan. 79, 499 P.2d 1147 (1972); *Fleming v. Fleming*, 271 S.E.2d 584 (N.C.App. 1980); *Berger v. Hollander*, 391 So.2d 716 (Fla.

App.1980); *Reynaud v. Reynaud*, 387 So.2d 1191 (La.App.1980); *Silcott v. Wilson*, 579 S.W.2d 291 (Tex.Civ.App.1979); *Smith v. Smith*, 361 So.2d 369 (Ala.Civ.App.1978); *White v. Bennett*, 553 S.W.2d 845 (Ky.App. 1977); *Silverstein v. Silverstein*, 371 A.2d 948 (Pa.Commw.Ct.1977); *Gamble v. Gamble*, 258 A.2d 261 (D.C.App.1969).

Before leaving the issue, we note the mere agreement of the parties to reduce child support payments would not be binding upon the courts as the power to determine the proper amount of child support is vested with the court and not in the parties to modify contractually. *Blackburn v. Blackburn*, 526 S.W.2d 463 (Tenn.1975), states:

A husband and wife contemplating divorce oftentimes enter into a property settlement agreement, which also provides for periodic payment of a specified amount for the support of their minor children. The agreement on child support payments is not binding on the trial court, but is evidence to which the court will look in determining the amount of child support needed and to be paid by the husband or, in a few instances, by the wife. If the trial judge accepts the agreement of the parties as the proper amount of support for the minor children and incorporates it in the decree of divorce, the agreement becomes merged into the decree and loses its contractual nature. [Citations omitted.] "The reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify." [Citation omitted.] If the child support provision of the contract did not merge into the decree and lose its contractual nature, any subsequent modification of child support payments by the trial court would be violative of the constitutional prohibition against the impairment of contractual obligations. Article 1, Section 20 of the Constitution of the State of Tennessee. [Citation omitted.] 526 S.W.2d at 465.

■ The court has the exclusive authority to modify a child support obligation after it has been established. *Also see Sutton v. Sutton*, 220 Tenn. 410, 417 S.W.2d 786 (1967); *Coleman v. Coleman*, 190 Tenn. 286, 229 S.W.2d 341 (1950). Accordingly, the issue of whether the parties reached an agreement is without relevance since the chancellor held circumstances had not changed sufficiently to require a reduction in child support *in futuro* or a forgiveness of arrearages and this determination is not challenged on appeal.

■ Plaintiff has appealed, insisting the chancellor's award of $73,000.00 for arrearages is incorrect and contends that the judgment should have been entered for $83,100.00. We agree. Defendant's counsel argues that the initial $13,100.00 in arrearages accrued in February 1976, not February, 1975. However, the record establishes defendant began paying $250.00 per month in February, 1975. Plaintiff, without contradiction, testified that at that time $13,100.00 in arrearages had already accrued. There is no evidence to support the February, 1976 date. The chancellor in his memorandum does, however, state the initial arrearages occurred in 1976, apparently a misstatement since he relied upon the accounting information furnished by plaintiff's counsel, indicating his intention to accept plaintiff's testimony as to the amount of child support owed.

The judgment of the chancery court is affirmed, as modified, and the cause remanded to that court for the entry of judgment in accordance with this opinion. Costs incident to appeal are assessed against defendant, Richard Reeves Wynn.

SANDERS and GODDARD, JJ., concur.