PORTER v. PORTER.

4-7747                                    190 S. W. 2d 440

Opinion delivered November 19, 1945.

372

*Downie & Downie* and *Elmer Schoggen,* for appellant.

*J. R. Booker* and *Taylor Roberts,* for appellee.

McFaddin, J. This is a divorce case. In 1938, the parties were married in South Carolina, and lived there together until separation in December, 1942. Appellee, Lewis Porter, arrived in Arkansas on April 29, 1944, and filed suit for divorce against appellant, Florrie Porter, on July 3, 1944. The alleged grounds of divorce were indignities. A divorce decree was granted Lewis Porter by the Pulaski Chancery Court on August 3, 1944; but this decree was set aside by the Court on September 29, 1944, on a showing by appellant that she had been prevented by unavoidable casualty from making her defense and that she had a meritorious defense. The order of September 29th, setting aside the decree of August 3rd, reads in part:

". . . The Court, being well and sufficiently advised as to all matters of law and fact arising herein, doth order that the said decree granting a divorce to the plaintiff from the defendant on August 3rd, 1944, as now shown of record in Vol. 65, page 483, be and the same is hereby cancelled, set aside, vacated, and held for naught, and that the answer of the defendant attached to said motion be considered and treated as the answer of the defendant to the allegations in the complaint of the plaintiff, the issues thereby made to be submitted to the Court at a later date."

The effect of this order, as shown by its terms, was to leave the divorce case pending, as though no decree had ever been rendered. See 31 Am. Juris. 264 and 31 Am. Juris. 319. Thereafter, on January 10, 1945, the Court heard the evidence of both parties and supporting witnesses on the question of residence and also grounds for divorce; and on February 1, 1945, a decree of divorce was granted Lewis Porter. Florrie Porter has appealed.

We pretermit any discussion of the grounds of divorce, because we are convinced that the plaintiff (appellee here) has failed to prove the residence requirements

which are essential to jurisdiction. Section 4386, Pope's Digest (which is Act No. 71 of 1931) says in part:

"The plaintiff, to obtain a divorce, must prove . . . in addition to a legal cause for divorce:

"First: A residence in the State for three months next before the final judgment granting a divorce in the action . . ."

The plaintiff wholly failed to prove a residence for three months next before the hearing of January 10, 1945, or next before the decree of February 1, 1945, which is the "final judgment granting the divorce in the action," since the decree of August 3, 1944, was completely set aside and annulled, as previously shown.

The plaintiff testified that he remained in Arkansas continuously from April 29, 1944, to August 10, 1944; that he then left Arkansas and went to New York for a month, and then went direct to Charleston, South Carolina, and repossessed his old office, and resumed his practice of chiropody, and remained in Charleston, South Carolina, continuously from September, 1944, until a few days before January 10, 1945, when he came to Arkansas to testify in this divorce case. Appellee's witnesses, while supporting him in his testimony that he had been in Arkansas continuously from April 29, 1944, to August 10, 1944, also testified that appellee had not been in Arkansas from August 10, 1944, until January, 1945.

In *Parseghian* v. *Parseghian,* 206 Ark. 869, 178 S. W. 2d 49, we had under consideration the same statute as is here involved—that is, § 4386, Pope's Digest. There, we were considering the requirements of two months' residence prior to filing the complaint for divorce, while, here, we are considering the requirement of three months' residence "next before the final judgment granting a divorce in the action." But the reasoning in the *Parseghian* case applies with equal force to the case at bar, and we, there, said that the residence requirement was jurisdictional.

The appellee tried to show that he all the time (from August, 1944, to January, 1945) intended to come back

to Arkansas; but his actions speak louder than his words: during his sojourn in Arkansas, appellee had, all the time, left his automobile in Charleston, South Carolina; the telephone in the office at Charleston had all the time remained in his name; all his property had remained in South Carolina except that part of his clothing and those few vocational instruments which he brought to Arkansas with him. After he obtained the decree on August 3, 1944, appellee gave up the room where he had been boarding in Arkansas, and took away with him everything that he had brought to Arkansas—evidently on the assumption that his divorce residence requirements had been fulfilled (a factual question not before us). But when the Court, on September 29, 1944, set aside the decree of August 3, 1944, the appellee failed to return to Arkansas, and remain for three months "next before the final judgment granting a divorce in the action." He thereby defeated his own divorce suit in that he failed to confer, by actual residence, any jurisdiction on the Pulaski Chancery Court to award him a divorce, even under the case of *Squire* v. *Squire*, 186 Ark. 511, 54 S. W. 2d 281, which, itself, has become a controversial holding.

It follows that the decree of the Chancery Court awarding the appellee a divorce is reversed, and appellee's action for divorce is dismissed at the cost of appellee.

GRIFFIN SMITH, Chief Justice, concurring. There is the statement in *Squire* v. *Squire*, referred to in the majority opinion, that "Even though [the plaintiff] moved to this State to bring a divorce suit and had the intention of leaving after the divorce was granted, this would not deprive the Court of jurisdiction, if she were actually and in good faith a *bona fide* resident for the period prescribed by the statute."

Although the Squire case has been followed by other decisions in which the statutory period was discussed, it is inconceivable that the General Assembly intended to invite dissatisfied non-residents to purchase round-trip tickets good for ninety days and come to Arkansas for the procurement of a divorce. The "good faith" spoken of in the opinion is so patently wanting in the very quality it mentions that *bona fide* has no meaning.

I think we should overrule what was there said and substitute a consistent declaration in respect of good faith.