## VIOLET M. HOLLINRAKE *v.* JAMES F. HOLLINRAKE.

### NO. 2887.

ARGUED SEPTEMBER 11, 1953.  DECIDED DECEMBER 31, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

398

OPINION OF THE COURT BY STAINBACK, J.

Petitioner herein filed a bill to establish a foreign decree of divorce as a decree in equity in this jurisdiction and for incidental relief.

The petition alleged in substance that the petitioner and the respondent were married in June, 1941; that respondent in November, 1950, being then a resident and citizen of the State of Nevada, instituted divorce proceedings against petitioner, in which proceedings petitioner appeared and filed answer; that on December 19, 1950, a decree of absolute divorce was awarded to respondent herein; a copy of the decree was attached to the petition and made a part thereof by reference. The petition further alleged that since the rendition of the said divorce decree respondent had removed from the State of Nevada and become a resident of the Territory of Hawaii; that the said decree had never been vacated, modified or set aside, and that respondent had failed and refused to comply with certain terms of the said divorce decree.

The decree of divorce recites, among other things, that petitioner and respondent on the 9th day of December, 1950, had entered into an agreement settling their property rights and making provision for the future support and maintenance of petitioner, and that the said agreement of the parties was by the terms of the divorce decree expressly approved, ratified and made a

part thereof; that the said decree by express provision reserved to the court of Nevada jurisdiction over the parties to modify provisions for the monthly support of petitioner pursuant to the agreement between the parties.

The provisions of the agreement between the parties incorporated in the divorce decree of the State of Nevada and thereby having the same force and effect as the decree (*Richards* v. *Richards,* 69 S. E. [2d] 911; *Koster* v. *Koster,* 81 A. [2d] 355) and alleged to have been breached by the respondent, are in substance that respondent should obtain within ninety days a 1951 Dodge automobile, fully insured, and pay for the same, paying not less than one third down and the balance within twenty-four months, and that if respondent were unable to secure such a car he should deliver to petitioner the Dodge automobile belonging to the business of the respondent and his partner; that commencing on the 5th day of January, 1951, and until respondent should have paid the full purchase price of said car, respondent should pay petitioner the sum of $100 per month for at least twenty-four months from January 5, 1951, and thereafter the sum of $150 per month, and that respondent should send a certain number of boxes of household goods to petitioner to any designated point in the United States.

Petitioner alleged that respondent had breached said agreement and said terms of the decree of divorce by failing and refusing to deliver to petitioner a 1951 Dodge automobile and certain boxes of personal effects and to make to petitioner the monthly payments specified in said divorce decree in the sum of $300. Petitioner alleged that by removal of the respondent from the State of Nevada she was unable to secure the enforcement of the said decree in that State; that she had no plain, adequate and complete remedy at law, and prayed that

the aforesaid decree of divorce entered in the State of Nevada be established as a foreign judgment and enforced in the manner provided by law, and that respondent be ordered and directed to comply with the terms and orders of the said decree, and that it be adjudged that there was now due and owing petitioner from respondent the sum of $300, her costs and attorney's fees.

Respondent interposed a demurrer to the bill.

The court sustained the demurrer on the ground that petitioner had failed to state any grounds for relief in equity and had an adequate remedy at law. The petition was ordered dimissed without leave to amend.

The chancellor, in a very able and learned discussion of the authorities as to whether or not the courts of one State may establish in equity a decree of divorce awarded by the courts of another State, and upon principles of comity enforce it by equitable remedies, pointed out the marked conflict of the authorities upon this question. The chancellor further pointed out that the question was not one as to the full faith and credit to be accorded to the divorce decree of the State of Nevada under the provisions of the United States Constitution as the full faith and credit clause related only to the substance of the judgment of another State and not to the procedural manner of its enforcement, citing *Lynde* v. *Lynde,* 181 U. S. 183.

One of the grounds for sustaining the demurrer was that the petitioner had an adequate remedy at law as the installments of alimony accrued under the Nevada decree were final and not within the rule of *Getz* v. *Getz,* 30 Haw. 637; that these installments were a debt of record entitled to recognition of the courts of this Territory under the full faith and credit clause of the Constitution of the United States, and that petitioner would have an adequate remedy in the courts of law in the Ter-

ritory with all the machinery to enforce such judgment as she might obtain.

Assuming that the remedy at law was adequate, the chancellor erred in dismissing the case without leave to amend; under our statute an action at law erroneously begun in equity should not be dismissed but transferred to the law side and be there proceeded with, with only such alterations in the pleadings as shall be essential. (R. L. H. 1945, § 12408.)

In dealing with enforcement of foreign judgments of divorce we first note that the Constitution of the United States (Art. 4, § 1; Code, § 1-401) provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Further, the Act of Congress provides that "judicial proceedings" may be proved or admitted in other courts of the United States and its territories and possessions by the attestation of the clerk and a certificate of the judge of the court that the attestation is in proper form, and that such judicial proceedings will have the same "full faith and credit" in every court within the United States and its territories and possessions as they have in the courts in such State or Territory or Possession from which they were taken.

The case of *Barber* v. *Barber*, 21 Howard 582, decided in 1858, is one of the earliest cases dealing with the enforcement of a decree of alimony in a State other than that in which the original decree was made. The case held that where a New York decree of divorce from bed and board allowed alimony to the wife and the husband removed to Wisconsin without having paid any part of the alimony or leaving any estate of any kind in New

York out of which it could be paid, the wife could sue by her next friend in a court of the United States in Wisconsin having *equity* jurisdiction to recover the amount of alimony decreed by the New York court. Mr. Justice Wayne in delivering the opinion said that there were two inquiries: (1) whether the wife was entitled to sue the husband in a court of the United States to recover the alimony due, and (2) whether a court of *equity* was the proper tribunal for the remedy in such case. He held that the wife had a separate domicile for the purpose of bringing suit in a United States court and that she had a right to pursue her remedy in the equity side of the District Court of the United States.

Another case, decided in 1901, *Lynde* v. *Lynde*, 181 U. S. 183, held that a judgment of record of another State for past-due installments of alimony may be received and carried into judgment under the full faith and credit clause "to have there the same binding force that it has in the state in which it was originally given." It also held that the refusal of a state court to give effect to so much of a decree in another State as affords alimony in the future and requires a bond, sequestration, a receiver and injunction, to secure payment of past and future alimony, presents no federal question.

Subsequently, the case of *Sistare* v. *Sistare*, 218 U. S. 1, considered these two cases and held there was no conflict between them. At pages 16 and 17 it is declared that the effect of the *Lynde* and *Barber* cases was as follows: "First, that, generally speaking, where a decree is rendered for alimony and is made payable in future installments the right to such installments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments, since, as declared in the *Barber case*,

'alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is.' Second, That this general rule, however, does not obtain where the law of the State in which a judgment for future alimony is rendered the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the installments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the installments becoming due." (This second point is dictum.)

The *Sistare* dictum has been followed by the state courts so far as the question of whether or not a decree for alimony for future installments or a decree which is subject to modification is entitled to full faith and credit under the United States constitutional provisions, but it can by no means be considered a closed question. Further, it does not prevent one State from establishing and enforcing in equity upon principles of comity the provisions of a decree of divorce awarded by the courts of another State that may include future as well as past installments of alimony.

The cases of *Barber* v. *Barber*, 323 U. S. 77, and *Griffin* v. *Griffin*, 327 U. S. 220, notwithstanding the *Sistare* case, specifically leave the question open as to future installments of alimony or whether a decree already accrued which is subject to modification or recall in the forum in which it is granted but has not yet been modified is entitled to full faith and credit until such time as it is modified.

In the *Barber* case the following statement is made: "* * * it is unnecessary to consider whether a decree or judgment for alimony already accrued, which is subject

to modification or recall in the forum which granted it, but is not yet so modified, is entitled to full faith and credit until such time as it is modified." (*Barber* v. *Barber,* 323 U. S. 77, 81.)

In recent years at least four justices of the Supreme Court have expressed the view that finality is not a prerequisite to extra-territorial enforcement under the full faith and credit clause.

In the *Barber* case, *supra,* in his concurring opinion Mr. Justice Jackson said: "Neither the full faith and credit clause of the Constitution nor the Act of Congress implementing it says anything about *final* judgments or, for that matter, about *any judgments.* Both require that full faith and credit be given to 'judicial proceedings' without limitation as to finality. *Upon recognition of the broad meaning of that term much may some day depend."* (*Barber* v. *Barber, supra,* p. 87.) (Emphasis added.)

In *Griffin* v. *Griffin,* 327 U. S. 220, *supra,* at 246, 247, Mr. Justice Rutledge reached the same conclusion, stating: "This Court has *not* heretofore held that *such* a judgment is not entitled to full faith and credit. Contrary dicta reflecting the belief that it would be lacking in necessary finality are, in my opinion, neither conclusive nor sound. * * * *The full faith and credit clause does not in any case require that a judgment, to be credited, must be endowed with absolute finality.* It is enough, in my opinion, if the judgment is endowed by the law of its origin with finality sufficient to sustain the issuance and levy of execution, although the same law may afford an opportunity for setting aside or modifying it upon the making of a specified showing." (Emphasis added.) Mr. Justice Black and Mr. Justice Frankfurter joined in Mr. Justice Rutledge's opinion in the *Griffin* case and further expressed opinions along this line.

An interesting statement in the early case of *Barber* v. *Barber,* 21 Howard 582, is: "And such a judgment or decree, rendered in any state of the United States, the court having jurisdiction, will be carried into judgment in any other state, to have there the same binding force that it has in the state in which it was originally given. For such purpose, both the equity courts of the United States and the same courts of the states have jurisdiction."

Had the language of this case been followed, the law relative to the enforcement of foreign alimony decrees would have developed along very different lines. In fact, this law is still in an evolutionary stage in the federal courts under the full faith and credit clause as would appear from such statements as that of Mr. Justice Jackson in the *Barber* case, *supra,* that both the Constitution and the Act of Congress implementing it seem to "Both require that full faith and credit be given to 'judicial proceedings' without limitation as to finality."

Assuming that the territorial court is not compellable to enforce the present decree under the provisions of the full faith and credit clause of the United States Constitution, should the Territory enforce it upon principles of public policy and comity and, more particularly, may it establish it as a decree in equity and enforce it by equitable remedies?

As pointed out by the chancellor, there is a marked conflict of authorities on this question as is evidenced by the citations of cases and the comprehensive notes in 97 A. L. R. 1197, 109 A. L. R. 652, and 18 A. L. R. (2d) 62.

As further stated by the chancellor, this is a case of first instance in the Territory and a ruling thereon is of prime importance. In view of the importance of this question it may be well to examine to some extent the nature, history and purpose of decrees for alimony to ap-

preciate fully the possibility and desirability of local equitable relief in cases involving foreign alimony decrees.

Alimony, as the word indicates, is money paid for "aliment" or support; it is the allowance which a husband by order of court pays to his wife living separate from him for her maintenance. In England alimony developed as a part of the law of divorce in the ecclesiastical courts. Prior to 1857 the ecclesiastical courts exercised jurisdiction over matrimonial cases and the allowance of alimony. Marriage was thought to be a sacrament and indissoluable although divorce *a mensa et thoro* was granted for adultery and cruelty. The ecclesiastical courts also had power to pronounce nullity sentences called divorce *a vinculo matrimonii* which declared the marriage invalid *ab initio* because of some impediment existing at the time of the marriage. The dissolution of a valid marriage could only be obtained by private act of Parliament. The divorce act of 1857 ousted the ecclesiastical courts of divorce jurisdiction and established the absolute divorce by judicial decree. This had already been done in most of the American States although in the early days of the Republic divorces were granted by state legislatures.

While an alimony decree is in some respects a money judgment, it is also an order by a court of equitable powers and as such is usually enforceable against the *husband's person as well as his property*. The courts hold while it is property, it is a particular kind which calls for special protection of the court and it may under no circumstances be diverted from its original purpose. It cannot be reached by the wife's creditors; it is not discharged by the husband's bankruptcy, nor can a husband offset it against a debt owed to him by the wife, and it ceases on the death of either party. (*Audubon* v. *Shufeldt,* 181 U. S. 575, 577, 578.) In at least one juris-

diction (Missouri) a spendthrift trust is invalid against an alimony decree.

In view of the difficulties of the courts in defining the nature of alimony, it is small wonder that the enforcements of the alimony judgments of other States have been the object of much difficulty and confusion; more particularly is this so because of the changing conditions of women in the economic life of the nation and the opposing views of the nature and purposes of alimony. From her old position as an identity merged in her husband, she now occupies a position of independence in most respects equal to that of her husband. Alimony in its origin was merely an equitable remedy for the wife when conditions grew intolerable and the husband was an offender against the marriage relationship. It was not available to her unless she were in need nor could she claim it unless she be without sin in respect to her marital relations; but today alimony is in many respects a settlement of property rights of the parties and the distribution of the assets of a quasi-partnership heretofore existing, and is no longer considered a "reward of merit for the virtuous or as a punishment for the wrongdoer." See Munson, *Some Aspects of the Nature of Permanent Alimony,* 16 Columbia Law Review 217.

Although, as previously pointed out, the authorities are in conflict on allowing equitable enforcement of foreign divorce decrees, the growing trend based on sound reasoning of public policy and justice is definitely toward permitting such enforcement. We will not attempt to review in detail all the authorities pro and con which are discussed in 97 A. L. R. 1197, 109 A. L. R. 652, and 18 A. L. R. (2d) 862. Decisions supporting equitable relief in such cases are found in California, Oregon, Minnesota, Florida, Washington, South Dakota, South Carolina, Mississippi, Kentucky, Tennessee, Texas and, more

recently New Jersey, possibly under its statute, and New York under statute with certain exceptions.

True, there are technical objections as well as practical objections to the enforcement in equity of a foreign judgment for alimony. One line of cases holds that alimony payable under a foreign decree is merely a debt collectible by execution on a judgment recovered locally upon such foreign decree. Other courts hold that a decree for alimony represents something more than a mere debt, that it embodies an obligation of the husband to support the wife, enforceable in personam as well as against the husband's property; that no matter where the obligation has arisen the necessity for effective enforcement is equally as great in one State as the other.

Since the various decisions of the United States Supreme Court most, if not all, of the state courts hold that enforcement by equitable remedies of foreign decrees for alimony does not rest on the requirements of the full faith and credit clause. The constitutional provision does not prescribe a method of enforcement but merely its recognition, and the constitutional provision is satisfied where there is a recovery of a local judgment on the foreign alimony decree and the levy of an execution at law thereunder. These jurisdictions usually hold that alimony is wholly a creature of statute and the provisions of the statute authorizing enforcement by contempt, sequestration and like proceedings apply only to decrees rendered in courts in the State where the original action is brought and are not available to enforce a like decree rendered in another State.

When we come to the question of the enforcement of future installments of alimony by equitable remedies, there is even more confusion and conflict of the authorities. Much of this is due to the theory that enforcement of the foreign decree is imposed upon the courts by the

full faith and credit provisions and that future installments are not *final* judgments and, therefore, there is no obligation to enforce the same by either legal or equitable remedies.

The finality of a foreign decree or its provisions as to future payments has no necessary relation to the remedy by which a local court will enforce the same as to accrued installments or those to accrue in the future. Many courts, appreciating the distinction between enforcement as a matter of constitutional obligation and enforcement as a matter of policy, do not differentiate between accrued and unaccrued installments but will apply equitable remedies in either case. In some cases the courts hold that future installments may be secured by receivership or sequestration or by contempt if they fall due and are unpaid. (18 A. L. R. [2d] 874, note.)

Further, if the "judicial proceedings" are to have "the same full faith and credit" in the local court as they have in such State from which they were taken, it would seem, notwithstanding the various United States Supreme Court dicta to the contrary, that alimony being a personal obligation to support, should be enforceable in personam as alimony decrees are in practically every State where rendered either under a statutory (equitable) provision or in an equity court itself.

One of the leading cases, *Fanchier* v. *Gammill*, 148 Miss. 723, 114 So. 812, was a suit in equity to establish and enforce a Nevada decree of alimony which was decided in favor of the petitioner. The court put its decision on account of the nature of the judgment for alimony which rests upon public policy in requiring a husband to support his wife and family and held that a decree of alimony with the extraordinary powers of enforcement by attachment and contempt proceedings should be established and enforced by the local equity court; that to

hold that a foreign judgment for alimony can be enforced in the State only by execution, the same as judgments at law, would be to impair or deprive a foreign judgment for alimony of its inherent power of enforcement by attachment and contempt proceedings.

Likewise, the Minnesota case of *Ostrander* v. *Ostrander,* 190 Minn. 547, 252 N. W. 450, stresses the nature of the obligation and differentiated it from an ordinary debt of record and held that a judgment for alimony could be enforced on the equity side of the court by resort to sequestration, receivership or even contempt proceedings. In that case the husband had apparently concealed or disposed of his property and assigned his salary.

In *Thones* v. *Thones,* 185 Tenn. 124, 203 S. W. (2d) 597, 600, the court said: "We apply equitable remedies to the enforcement of an alimony decree because the obligation of a husband to support his wife is a matter of public concern. No matter where the decree for alimony is rendered, the enforcement thereof is just as necessary in the interest of society, whether the husband is in the state where he was originally ordered to pay alimony, or whether he has fled or gone to another state. * * * Further, the declared public policy of this state is to punish by contempt husbands who through wilful disobedience or obstinacy refuse to comply with a court order to pay alimony. * * *"

*McKeel* v. *McKeel,* 185 Va. 108, 37 S. E. (2d) 746, was a case where the Virginia court committed an ex-husband to jail for failure to pay accrued and future installments of alimony awarded by a Florida decree. In discussing the full faith and credit clause and comity the court said: "But even though the courts of Virginia may not be compelled to do so under the full faith and credit clause of the Federal Constitution, upon principles of comity they may establish as their own decree a foreign

decree for future payments of alimony, with the same force and effect as if it had been entered in Virginia, provided, of course, the foreign decree violates no public policy of Virginia."

There are many decisions to the same effect in the A. L. R. notes referred to *supra*.

The contention that alimony is purely a creature of statute and therefore equity has no jurisdiction to enforce payment of the same is not sound, certainly not in Hawaii, but first to note the general practice in other jurisdictions. As stated by Mr. Justice Wayne in *Barber* v. *Barber,* 21 Howard 582, *supra,* at 590 and 591, after citing cases in which a wife may sue by a next friend in equity, stated: "There is, too, another ground of jurisdiction in equity, just as certainly established as that is of which we have just spoken. It comprehends the case before us. It is, that courts of equity will interfere to compel the payment of alimony which has been decreed to a wife by the ecclesiastical court in England. Such a jurisdiction is ancient there, and the principal reason for its exercise is equally applicable to the courts of equity in the United States.) It is, that *when a court of competent jurisdiction over the subject-matter and the parties decrees a divorce, and alimony to the wife as its incident, and is unable of itself to enforce the decree summarily upon the husband, that courts of equity will interfere to prevent the decree from being defeated by fraud."* (Emphasis added.) See also *Glanton* v. *Renner,* 285 Ky. 808, 149 S. W. (2d) 748.

In Hawaii our statute defining the jurisdiction of a court in equity (R. L. H. 1945, § 12402) provides that: "The several circuit judges may hear and determine in equity, all cases hereinafter mentioned, when the parties have not a plain, adequate and complete remedy at com-

mon law, that is to say: * * * [enumerating many types of suits]

"16. And shall have full equity jurisdiction, according to the usage and practice of courts of equity in all other cases where there is not a plain, adequate and complete remedy at law."

In construing this statute this court in *Dole* v. *Gear*, 14 Haw. 554, held that equity may grant maintenance to a wife without special statutory authority and independently of a suit for divorce and separation on the ground that the remedy at law through the pledging of the husband's credit for necessaries is inadequate and though the legislature has made express provision for alimony in connection with divorce and separation proceedings.

In commenting on the effect of the divorce and separation statutes of Hawaii, the court said in *Dole* v. *Gear*, *supra*, at page 564: "The separation law cannot be regarded as preventing the equity jurisdiction merely on the ground that it provides an adequate remedy at law, for it is a general principle, often followed by this court, that if equity jurisdiction exists in the absence of a statutory remedy at law, it is not taken away by the grant of such a remedy." The court, in discussing the common law of England, as ascertained by English and American decisions, being the common law of Hawaii in all except certain cases, held that equity is included in the common law within the meaning of the statute.

This case of *Dole* v. *Gear*, 14 Haw. 554, has been quoted with approval in a number of Hawaiian decisions, the most recent being *Territory* v. *Alford*, 39 Haw. 460, where at page 466 the quotation from *Morgan* v. *King*, 30 Barb. 9, was repeated, and the principle that the common law consists of fundamental principles and reasons and the substance of rules as illustrated by the reasons

on which they are based rather than by the mere words in which they are expressed. "It is not immutable but flexible and by its own principles adapts itself to varying conditions, and the court at all times in the application of any rule should give heed to present-day standards of wisdom and justice." (*Territory* v. *Alford, supra,* syllabus.)

*Sakakihara* v. *Sakakihara,* 26 Haw. 89, in holding that equity has jurisdiction to annul a marriage when a suit is based upon a recognized ground of equitable jurisdiction, and the inclusion of the same ground as the basis of a statutory action at law will not oust equity out of its jurisdiction, cited *Dole* v. *Gear, supra,* with approval. At page 91 of the *Sakakihara* opinion, it was stated: "It is clear that these statutory provisions confer upon circuit judges at chambers jurisdiction to hear and determine at law such a case as we have here presented but they cannot be regarded as depriving equity of jurisdiction, if it otherwise would have it, merely on the ground that they provide an adequate remedy at law 'for it is a general principle often followed by this court that if equity jurisdiction exists in the absence of a statutory remedy at law it is not taken away by the grant of such a remedy. Jurisdiction in equity does not cease and revive from time to time with the enactment and repeal of statutes which confer a remedy at law' (*Dole* v. *Gear,* 14 Haw. 554, 564)."

Having disposed of the lower court's conclusion of exclusive jurisdiction in matters of divorce and alimony incident thereto being statutory and vested in circuit judges of the several circuits as distinguished from judges presiding in equity, we next come to the various reasons given by the court as to why enforcement in equity would be undesirable from a practical standpoint.

The lower court was apparently more solicitous over

the welfare of respondent than petitioner in this case, saying that if the decree were to be equitably enforced the respondent would not only be subject to contempt proceedings but his property might be subject to receivership; further, that he could not post a bond to prevent sequestration of his personal estate; that he could not obtain a release or modification of the award however inequitable its enforcement would be; that it would necessitate a long and costly trip by respondent if he wished to secure a modification of his liability under the decree, and that the principles of comity should be adopted with due regard to the protection of the rights of citizens of this jurisdiction; that Hawaii is not liable to become a refuge for defaulting husbands, and that to follow the rule of equitable enforcement of the foreign decree would in effect be an adoption of all the varying divorce laws of all the States.

In addition to the objections stated by the chancellor to the enforcement of a foreign decree for alimony by equitable remedies of the forum, there are many other practical and technical difficulties. Where a jurisdiction applies equitable remedies it is common for the local court to decree that the foreign decree of alimony be established as a local decree, enforceable with the same equitable remedies as are local decrees of alimony, thus making the respondent vulnerable to a charge of contempt as well as sequestration, receivership of property, injunction, imposition of equitable lien for the security and collection of accrued alimony and alimony to accrue. Under such circumstances the question may well arise as to what is the situation regarding such future installments if the foreign court modifies its decree as to such installments. Obviously it would be inequitable to punish a respondent by contempt for not paying the full amount when the foreign decree under which its payment had

been ordered has reduced the amount. Thus, as would be expected, there are a number of decisions that if a wife seeks to enforce in equity a decree for alimony, respondent is entitled to invoke any equitable defense, that if the wife seeks equity she must do equity; and the respondent should be permitted to show any modification of the foreign decree by way of equitable defense and the local decree be modified accordingly. A number of cases also hold that a change of circumstances creating an equity defense may also be shown. (*Haas* v. *Haas,* 59 So. [2d] 642; *Sackler* v. *Sackler* [Fla.] 47 So. [2d] 292; *Cousineau* v. *Cousineau,* 155 Ore. 184, 63 P. [2d] 897.)

In balancing the conveniences, it is very obvious that a refusal to enforce by equitable decree would create more injustice than the enforcement thereof.

A brief in the Massachusetts Law Quarterly of October, 1949, points out the practical necessity for the equitable enforcement of foreign alimony decrees, some of the reasons being that many defendants have no assets upon which execution can be had; that it is simple to secrete one's assets or place the same in the name of friends; or, when a new marriage has taken place, the property may be taken in joint ownership with the new spouse which would defeat efforts to execute on a judgment; that a new suit must be instituted after each unpaid installment becomes due. "And finally, that the remedy at law is inadequate is evident from the fact that it is seldom used in support cases when the defendant is in his home state. * * * If equitable enforcement is needed at home, it is all the more necessary in a foreign state."

We agree with the conclusion of the learned authority that both by the weight of authority and on principle, a remedy at law which is practically ineffective is not an adequate remedy. (*Cousineau* v. *Cousineau,* 63 P. [2d] 897, 903, quoting from *Ostrander* v. *Ostrander,* 190 Minn.

547, 252 N. W. 449, and citing other authorities.)

The remedy at law upon a foreign order to pay alimony being practically ineffective and inadequate and not "plain, adequate and complete," we hold therefore that under the authority of section 12402, Revised Laws of Hawaii 1945, and the decision of *Dole* v. *Gear, supra,* equity may "enforce the decree summarily upon the husband" (*Barber* v. *Barber,* 21 Howard 582, 591) ; that in any proceeding in equity for enforcement of the decree all equitable defenses may be presented by respondent, including a modification of the foreign decree, if any, which should be given full force and effect.

In so far as the case of *Getz* v. *Getz,* 30 Haw. 637, which holds that an action cannot be maintained in this jurisdiction at law on a foreign judgment that is not final and is subject to modification by the court which rendered it, may be in conflict with the decision herein, it is overruled.

Reversed and remanded.

*S. Kanemoto* (*V. H. Yano* on opening brief) for appellant.

*B. Houston* (also on the brief) for appellee.