## IN THE MATTER OF THE APPLICATION OF JAMES R. BURNS, FOR A WRIT OF HABEAS CORPUS.

### No. 4484.

November 3, 1965.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY WIRTZ, J.

This appeal has resulted from the dismissal of the Petition for a Writ of Habeas Corpus brought by petitioner-appellant to enforce an Oregon divorce decree

awarding custody of the two minor children of his marriage with respondent-appellee to him.

On January 2, 1963, respondent-appellee brought a complaint for divorce in the Circuit Court of the State of Oregon in the County of Jackson in which she prayed for the custody of the two female minor children of the marriage, then three and four years of age respectively. Petitioner filed an answer in said action denying the material allegations of the complaint, together with a cross-complaint for divorce also praying for the custody of the children. In response to the cross-complaint, respondent filed a general denial.

After a trial the Oregon Circuit Court on June 6, 1963, entered its opinion, findings and conclusions[1] granting the divorce to respondent and awarding her the custody of the children. Thereafter, and in accordance therewith, the Circuit Court of Oregon on July 2, 1963, entered a decree of divorce.

On August 2, 1963, after service on respondent's attorney, petitioner filed a motion for order to show cause, supported by affidavit, why the divorce decree should not be modified to award custody of the minor children to petitioner, upon which the Circuit Court of Oregon entered an order to show cause returnable on August 19, 1963. In

---

[1] The pertinent excerpt follows:

"The Court wishes to impress upon plaintiff that the award of custody to the children to her is only temporary in that any significant change in circumstances which affects the welfare of the children may result in modification of the decree and award of the children to defendant. The Court expects plaintiff at all times to be fully aware of and responsive to her duties to these childen and to do the utmost within her power and ability to provide adequately for their good health, security, happiness, education and general upbringing. This means generally that during the times she must be away from them at work she must provide adequately for their care and supervision by suitable babysitters or the like who are mature, responsible and capable. It means further that apart from her working time, she should devote the remaining time to being with her children to the best of her ability.

"The decree should grant defendant reasonable rights of visitation to the children."

the meantime, on July 4, 1963, just two days after the entry of the Oregon divorce decree, respondent left Oregon for California taking with her the children. On July 9, 1963, she remarried. On August 1, 1963, the day before petitioner filed his motion to modify the custody provisions of the Oregon divorce decree, respondent and her new husband, together with the minor children, left California for Hawaii with the intent to make Hawaii their future home.[2]

On August 12, 1963, respondent's attorney secured the approval of a different judge of the same Circuit Court of Oregon to withdraw as attorney of record in the Oregon divorce case. However, when it later came to the attention of the original judge that respondent's attorney had been served with the motion for order to show cause prior to the filing of his motion to withdraw, the order approving the withdrawal apparently was informally set aside and respondent's counsel was notified to appear at the continued hearing on the order to show cause and in fact did appear at that hearing on October 7, 1963 and participated in the proceedings by cross-examining the witnesses produced by petitioner. On October 14, 1963, the Circuit Court of Oregon entered an order setting aside the divorce decree granted respondent on July 2, 1963, on the ground of fraud on the part of respondent and awarded the temporary custody of the minor children to the petitioner with leave to file an amended answer and cross-complaint to the original complaint of divorce brought by respondent.

Thereupon, on November 15, 1963, petitioner filed his Petition for a Writ of Habeas Corpus in the Circuit Court of the First Circuit, to which respondent filed her return on December 6, 1963. The matter was set down for hearing and was heard on December 13, 1963, at which time the testimony of respondent was taken. On December 17,

---

[2] The parties hereto stipulated in open court that such was respondent's intent at the time she left California for Hawaii.

1963, petitioner filed a motion to strike as impertinent and immaterial the allegations in the return to the effect "that Petitioner is not a fit or proper person to have the care, custody or control of said minor children; and that it would not be for the best interests of said children to be by the Court placed in the custody of Petitioner;" and for summary judgment. On the same date, December 17, 1963, petitioner filed his amended answer and cross-complaint in the divorce proceedings in Oregon pursuant to the leave of court granted him on October 14, 1963. On April 30, 1964, the trial judge entered his decision denying the motion to strike and summary judgment. Thereafter, in Oregon on May 5, 1964, the Oregon court entered its decree on the amended answer and cross-complaint awarding the divorce as prayed for in the cross-complaint to petitioner, together with custody of the minor children. By stipulation entered on August 20, 1964, this final decree of the Oregon court was filed and the matter was submitted for final decision.

Due to the fact that this stipulation was not brought to the attention of the trial judge, no further action was taken until, by letter on October 8, 1964, counsel for petitioner reminded the court that "this case is now submitted on the general issue (as opposed to the Motion for Summary Judgment) and we are awaiting a Decision and Judgment." The decision of the trial judge was entered on November 5, 1964, followed by an order pursuant thereto on December 4, 1964, dismissing the petition and awarding the custody of the minor children to respondent until further order of that court, from which this appeal was taken.

While petitioner states that the sole question involved under this appeal is "whether the Court below erred in failing to give full faith and credit to the findings, orders and decrees of the Oregon Court," actually the question

would be more properly stated by limiting it to the custody provisions as the marital status and the property rights determined by the Oregon divorce decree were not before the trial judge in the proceedings below. Since jurisdiction of the Oregon court is essential to the recognition of its decrees under the full faith and credit clause of the Constitution of the United States, we turn to a consideration of the first of the three specifications of error[3] relied on by petitioner under this appeal.

It is fundamental that a forum state is not required to render full faith and credit under the United States Constitution to sister state judgments which were rendered without jurisdiction over either the person or subject matter or in proceedings in rem over the res. *Thompson* v. *Whitman*, 85 U.S. 457, 461 (18 Wall.).

Here the Oregon court initially issued a decree awarding an absolute divorce with custody of the children in favor of the respondent with reasonable rights of visitation to the petitioner. In its opinions and findings the Oregon court stressed that the Oregon decree was subject to modification upon significant change in circumstances which affect the welfare of the children. At the hearing initiated by the petitioner's motion for modification the Oregon court vacated the entire decree which had been rendered on July 1, 1963, that is both as to the marital status and the custody aspects and reinstated the original complaint for resumption of litigation from that point on as to the amended answer and cross-complaint of the petitioner. No question has been raised as to this action of

---

[3] "The Court below erred in failing to give full faith and credit to the Oregon court's:

"(a) Determinations of proper service and notice and its consequent assumption of judicial jurisdiction over the Appellee;

"(b) Order Setting Aside Decree and Awarding Temporary Custody, dated October 14, 1963;

"(c) Decree (granting permanent custody of the children herein to Appellant), dated May 5, 1964."

the Oregon court although it is not clear from the record whether that court acted on its own motion or on an oral motion of petitioner's attorney. Thereafter, the court, pending further hearings on the amended answer and cross-complaint entered a temporary order awarding custody of the children to petitioner.[4] Thereafter at the conclusion of the hearing on the amended answer and cross-complaint the court entered another decree awarding an absolute divorce and custody in favor of the petitioner. This decree (entered almost ten months after the children had become domiciled in Hawaii), like the temporary custody order, makes no reference to any evidence considered or findings made concerning the welfare and best interests of the children. Although the petition for writ of habeas corpus instituted in Hawaii was commenced after the award of temporary custody to petitioner, a final order dismissing the writ was not entered until after the final decree covering both the divorce and custody aspects had been entered and received in evidence by stipulation. There would appear to be no significance[5] attributable to

---

[4] This order of October 14, 1963 contains a finding that the mother (respondent) had procured the original divorce decree of July 2, 1963 "by fraud and deception and by means of false testimony" concerning her lack of romantic interest in the man whom she married shortly after the entry of the decree, and her stated intent to continue to operate her business in Oregon to support the children. It contains no finding that the mother is an unfit custodian for the children or that the father is a fit and proper custodian. The Oregon record in evidence indicates that, in passing on the father's (petitioner's) motion for modification, the Oregon court not only heard no evidence on but gave no consideration to the question of the best interests of the children. This record further discloses that the issue as to the best interests of the children was litigated and specifically resolved in favor of the mother (respondent) in the Oregon proceedings which led up to the entry of the original divorce decree of July 2, 1963. When the Oregon court set aside this decree for fraud of the mother (respondent), it gave no consideration to the question of the effect of that on the welfare and best interests of the children.

[5] The distinction in the effect to be given, under the full faith and credit clause, to temporary and final decrees, while briefed and argued, actually was rendered immaterial with the reception in evidence (by stipulation) of the final Oregon decree.

whether the trial court's order of dismissal of the writ contemplated only the temporary award of custody. *Cf., Hollinrake* v. *Hollinrake,* 40 Haw. 397, 402-404. Further, since the final permanent custody order was properly introduced into evidence with the express consent of the parties, it would seem apparent that the petition for a writ of habeas corpus had been amended to conform to the proof and that the lower court's order of dismissal had reference to this final permanent custody order rather than the award of temporary custody. H.R.C.P., Rule 15(b).

The effect of vacating the divorce decree by the Oregon court, both as to its divorce and custody aspects, was to reinstate the original pleadings, thereby retaining jurisdiction in Oregon to resume the litigation under the original complaint of the respondent and the answer and cross-complaint of the petitioner. *Carpenter* v. *Carpenter,* 244 N.C. 286, 93 S.E.2d 617; *Yorke* v. *Yorke,* 3 N.D. 343, 55 N.W. 1095; *Porter* v. *Porter,* 209 Ark. 371, 195 S.W.2d 53; *Roddis* v. *Roddis,* 18 Wis.2d 118, 118 N.W.2d 109; *Conant* v. *Conant,* 221 Mo.App. 300, 278 S.W. 90; *Smith* v. *Smith,* 68 Nev. 10, 226 P.2d 279; *Britton* v. *Bryson,* 216 Cal. 362, 14 P.2d 502; *State ex rel. Sparrenberger* v. *District Court,* 66 Mont. 496, 214 Pac. 85.

Petitioner's contention is summarized in his opening brief as follows:

"The Circuit Court of the State of Oregon in and for the County of Jackson at all times pertinent had and continues to have jurisdiction over the parties hereto including the two minor children which are the object of the Habeas Corpus proceedings here on appeal. At the hearings leading up to the entry of its Order Setting Aside Decree and Awarding Temporary Custody on October 14, 1963 and its final Decree on May 5, 1964 that Court made specific findings of fact pertaining to notice, service and jurisdiction. As a

consequence the Court below was obliged to give full faith and credit not only to that finding of judicial jurisdiction but also to the awards of temporary and permanent custody of the minor children made by the Oregon court."

This contention is based mainly on *Sherrer* v. *Sherrer*, 334 U.S. 343, a divorce case not involving a custody award, which holds that "the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree."

Respondent has countered in her answering brief that the doctrine of *Sherrer, supra,* has not yet been applied in custody cases, relying on the text of 3 Nelson, *Divorce and Separation,* 554 (2d ed. 1945) and 17A Am. Jur., *Divorce and Separation,* § 994 (1958). But this contenton must be considered in the light of the complete statement in this section of American Jurisprudence, namely that one may argue that if the defendant appears personally in a divorce case or in a proceeding to modify a custody decree so that there is an opportunity to litigate the question of the jurisdiction, the issue ought to be res judicata between the parties.

This leads us to the question of respondent's appearance in the Oregon court subsequent to the original divorce decree rendered on July 2, 1963. The record is not clear whether respondent was actually represented by counsel at the subsequent hearings or not since her attorney did move to withdraw from the case, which motion was granted by another Oregon judge prior to such hearings but after

service of the modification papers had been made on him. The allowance of withdrawal of respondent's attorney was apparently later informally set aside by the Oregon judge conducting the subsequent hearings although this is not clearly reflected in the record. However, respondent's attorney in the original divorce proceedings did in fact appear to represent her interests and did participate in the hearings to modify which resulted in the final decree awarding the divorce and custody of the children to petitioner. In addition to the motion and order to show cause having been served upon her attorney, copies were also received by respondent through the mail on an unknown date after her arrival in Hawaii and there was correspondence between respondent and her attorney concerning the proceedings.[6] Respondent's reliance on *Moore* v. *Lee* (Fla.), 72 So. 2d 280, indulging in the presumption that after the time for appeal has lapsed under a decree,[7]

---

[6] The transcript of the hearing in Oregon reveals the following colloquy between the court and counsel for respondent:

"THE COURT: Very well, Well now, can you advise me, has the Plaintiff had notice of this?

MR. COURTRIGHT: She has had notice of this particular date and, as I recall, an earlier one by correspondence from me.

THE COURT: How much notice has she had? Can you tell me?

MR. COURTRIGHT: She was notified by letter from me on September 19, 1963 about this hearing set for October 7, and she was previously notified by letter dated August 13, 1963, your Honor, that I had in fact been served with an order to show cause.

THE COURT: Has she asked you to represent her in the matter or given you any authority whatsoever?

MR. COURTRIGHT: Specifically in so many words, no. Impliedly, yes. In other words, I asked her about this and I have received some correspondence from her and in that sense, from the total picture of the thing, I assume that she would want me to do so.

THE COURT: Very well. * * *"

[7] The time for appeal from the original divorce decree of July 2, 1963, appears to have expired the day before the modification papers were filed.

the attorney of record for any party in the original action no longer has authority to effectively bind that party in any subsequent proceedings to modify that decree, is ineffective in view of the attorney's actual appearance and participation in the Oregon proceedings on behalf of the respondent with her knowledge and apparent approval. Further, *Moore, supra,* actually turned on the question of notice and opportunity to be heard rather than service of process as seen from this language of the court:

> "By this we do not mean—nor do we hold—that service of new process is necessary on the adverse party to confer jurisdiction of the cause on the court because that jurisdiction was obtained in the original proceedings and reserved in the decree itself for the purpose specified. What we do mean—and hold—is that the adverse party is entitled to adequate notice and opportunity to be heard before such decree may be altered in a manner that will directly affect his person, status or property." 72 So. 2d 282.

Under the facts above outlined the Oregon court determined its jurisdiction by the purely legalistic analysis that a custody decree is "as much a decree in rem as is the divorce itself," the res being the status of both parents and children with a "legal situs" at their domicile.[8] This legalistic approach has found its way into the Restatement of Conflict of Laws which provides that a foreign decree creating "the status of custodianship" (§ 144, comment a), "will be enforced" if the custody "has been awarded by the proper courts" (§ 147), *i.e.,* by a "court of the state of domicile of the child" (§§ 145, 146). In criticism of this purely legalistic approach, Justice Cardozo uses language of stronger import:

---

[8] Minor, *Conflict of Laws,* 208 (1901). See also Rorer, *American Interstate Law,* 183 (1879).

"The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. * * *" *Finlay* v. *Finlay,* 240 N.Y. 429, 431, 148 N.E. 624, 625.

In view of respondent's absence from the Oregon hearings to modify, the fact that she was then as she is now domiciled in Hawaii was not effectively called to the Oregon court's attention. Oregon case law seems to say that when a child changes its domicile from one state to another and becomes a citizen of the second state, he is no longer subject to the supervision and authority of the courts of the first state. *Griffin* v. *Griffin,* 95 Or. 78, 187 Pac. 598; *Hughes* v. *Hughes,* 180 Or. 575, 178 P.2d 170. Further, *Griffin, supra,* by way of dictum stated that in the case of a mother who after winning custody over a child, removes herself and child and subsequently establishes domicile or residence in a sister state, the actions of the mother are not violative of the father's visitation rights and the child's domicile or residence follows that of the mother. 95 Or. 87, 187 Pac. 602. But it is not inconceivable that Oregon and Hawaii had concurrent jurisdiction over these children at the time of the hearings to modify in Oregon unless we are bound by the assumption that some one state must have exclusive jurisdiction.

In the fairly recent leading case of *Sampsell* v. *Superior Court,* 32 Cal.2d 763, 197 P.2d 739, the Supreme Court of California listed the current theories, including the Restatement theory with its emphasis on the child's domicile and others requiring "in personam jurisdiction over the children's parents," or the child's physical presence within the state. Rejecting "hard and fast rules" in this field, the court found "authority for the proposition that courts of two or more states may have concurrent jurisdiction

. . . [i]n the interest of the child . . ."; although it felt that a court should and would decline such jurisdiction where "the other state has a more substantial interest in the child and leave the matter to be settled there." This flexible doctrine of the states' substantial interests, sponsored by Chief Justice Traynor of the Supreme Court of California, has found wide recognition in the other fields of conflict of laws, although American courts have not as yet assumed or declined jurisdiction over a foreign child, without regard to legalistic formulas, whenever the welfare of the child so requires as would result if the above referred to dictum of *Sampsell, supra,* became the general law.

Disinclined as we are to ignore a litigated adjudication of a sister state on the question of its jurisdiction, in view of the doctrine of *Sherrer, supra,* we will accept the determination of the Oregon court as to its jurisdiction to enter the amended custody decrees, without excluding the possibility of Hawaii likewise having jurisdiction over these children, so as to proceed to the crucial question of whether or not such amended custody decrees should be given full faith and credit under the Constitution of the United States.

It should be apparent that custody decrees cannot be treated like other judgments for purposes of extra-territorial recognition. Such decrees are subject to modification at any time in accordance with the changing requirements of the child's welfare. Further, the settlement of a dispute between hostile spouses should not be binding on the child who has lacked independent representation in these proceedings. The primary principle in this field should be the court's discretion exclusively governed by consideration of the child's welfare. That has always been the governing principle in custody disputes between parents residing in Hawaii. *Fernandes* v. *Fernandes,* 32 Haw. 608. It would seem that neither full faith and credit nor

comity can be expected or given at the expense of this discretion.

Mr. Justice Frankfurter, in his concurrence with the Court's opinion in *May* v. *Anderson*, 345 U.S. 528, 536, forcefully asserted that:

"Property, personal claims, and even the marriage status (see, *e.g., Sherrer* v. *Sherrer*, 334 U.S. 343), generally give rise to interests different from those relevant to the discharge of a State's continuing responsibility to children within her borders. Children have a very special place in life which law should reflect. Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to determination of a State's duty towards children. There are, of course, adjudications other than those pertaining to children, as for instance decrees of alimony, which may not be definitive even in the decreeing State, let alone binding under the Full Faith and Credit Clause. Interests of a State other than its duty towards children may also prevail over the interest of national unity that underlies the Full Faith and Credit Clause. But the child's welfare in a custody case has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State's discharge of its responsibility at another time. Reliance on opinions regarding out-of-State adjudications of property rights, personal claims or the marital status is bound to confuse analysis when a claim to the custody of children before the courts of one State is based on an award previously made by another State. Whatever light may be had from such opinions, they cannot give conclusive answers."

However, the courts must be mindful not to permit a spouse to defy a foreign court. To encourage the scheming

parent who, dissatisfied with a custody award, seeks a redetermination of the issue in the court of another state would be clearly harmful, particularly where the second court's jurisdiction has been obtained in bad faith. *Ex parte Mullins,* 26 Wash.2d 419, 174 P.2d 790. And yet a parent's wrong by itself should not preclude a solution dictated by the child's interest. This would explain the numerous cases which deny full faith and credit to sister state decrees which purported to deprive the spouse now within the forum's jurisdiction of custody previously granted on the mere ground of disobedience. *Gaunt* v. *Gaunt,* 160 Okla. 195, 16 P.2d 579; *State ex rel. Huhn* v. *Huhn,* 224 La. 591, 70 So. 2d 391; *People ex rel. Wagner* v. *Torrence,* 94 Colo. 47, 27 P.2d 1038; *Cole* v. *Cole,* 68 Idaho 561, 201 P.2d 98; *Dawson* v. *Dawson,* 241 S.W.2d 725 (Mo. App. 1951). See also *Application of Enke,* 129 Mont. 353, 287 P.2d 19, *cert. denied,* 350 U.S. 923; *In re Wren,* 48 Cal. 2d 159, 308 P.2d 329; *Cunningham* v. *Cunningham,* 166 Ohio St. 203, 141 N.E. 2d 172; Comment, 56 Colum.L.Rev. 630.

However, the weight of authority is that in the absence of fraud, or want of jurisdiction, affecting its validity a decree of divorce awarding the custody of the child of the marriage must be given full force and effect in other states as to the right of the custody of the child *at the time* and *under the circumstances* of its rendition; but that such a decree has no controlling effect in another state as to facts and conditions arising subsequently to the date of the decree; and the courts of the latter state may in proper proceedings award the custody otherwise upon proof of matters subsequent to the decree which justify the change in the interest of the child. *Annotations,* 20 A.L.R. 815, 72 A.L.R. 441, 116 A.L.R. 1299, 160 A.L.R. 400. This almost uniform practice in considering the extra-territorial effect of custody decrees apparently has resulted in the

doctrine of the Restatement, *Conflict of Laws,* that a foreign custody decree will be enforced if the custody "has been awarded by the proper courts," whose "merits cannot be re-examined" but can be altered only "for reasons which arise after the previous award." § 147, Comment *a.*

The Supreme Court of the United States in the only three cases dealing with extra-territorial recognition of custody orders under the full faith and credit clause, has failed to offer a solution. Indications from the various opinions, while reflecting the Court's division, would seem to show a preference for the applicability of the full faith and credit clause to custody orders under the "changing circumstances" rule.[9]

This legalistic approach embodying this limitation under the "changing circumstances" rule enables any court to reach the desired result by either finding or denying a change of circumstances. As the highest court of Connecticut has pointed out "a finding of changed conditions is one easily made when a court is so inclined" so that "the recognition extraterritorially which custody orders will receive or can command is liable to be more theoretical than of great practical consequence." *Morrill* v. *Morrill,* 83 Conn. 479, 77 Atl. 1, 6. In view of this semantic flexibility allowed under the general rule several courts have abandoned any pretense of recognizing foreign custody decrees on grounds of either full faith and credit or comity and have claimed complete discretion in re-examining the merits of such decrees. This rule, known as the "Kansas

---

[9] *New York ex rel. Halvey* v. *Halvey,* 330 U.S. 610, refrained from passing on the constitutional question by affirming a New York order which had modified a Florida custody award on the narrow ground that Florida law would have permitted the modification. In *May* v. *Anderson, supra,* 345 U.S. 528, the constitutional question was not reached as the case was disposed of on jurisdictional grounds. Finally, *Kovacs* v. *Brewer,* 356 U.S. 604, in remanding for clarification as to whether the modification of a sister state custody award rested on both prior and subsequent events or solely on the latter ("change of circumstances"), explicitly reserved the constitutional issue for future consideration.

Rule" is succinctly stated in the case of *Wear* v. *Wear,* 130 Kan. 205, 224, 285 Pac. 606, 616, in the following language:

> "As between the parents themselves, they may be bound by a former adjudication * * *, but the state, in its relation of *parens patriae,* looks to the welfare of the child at the time the inquiry is being made, and for that purpose former adjudications between parents are evidenciary [sic] only and not controlling."

This rule was recently applied in *Turner* v. *Melton,* 194 Kan. 732, 402 P.2d 126, 128, in the court's statement that "* * * where, as here, the court had all parties, including the child, before it, there was ample authority for the court to make the order that it did under the general theory and doctrine of 'parens patriae,' which recognizes the right and duty of the state to step in and act for what appears to be the best interests of a child." At least two courts have gone further and have indicated their willingness to repudiate full faith and credit to foreign custody decrees altogether. *Boardman* v. *Boardman,* 135 Conn. 124, 62 A.2d 521, 527; *Bachman* v. *Mejias,* 1 N.Y.2d 575, 136 N.E.2d 866, 868. The Court of Appeals for the District of Columbia seems to entertain the same view,[10] as do the courts of Florida, Nebraska, New Jersey and Pennsylvania.[11]

The frankness and candor of the Kansas doctrine appeals to this court as the best manner of disposing of this appeal. Under this doctrine, the remarriage of respondent and the fact that this marriage appears to be successful; the facts that she and her new husband have purchased a

[10] See *Langan* v. *Langan,* 150 F.2d 979 (D.C.Cir. 1945); *Boone* v. *Boone,* 150 F.2d 153 (D.C.Cir. 1945).

[11] *Little* v. *Franklin,* 40 So. 2d 768 (Fla. 1949); see *Application of Reed,* 152 Nebr. 819, 43 N.W.2d 161; *Ex parte Erving,* 109 N.J.Eq. 294, 157 Atl. 161; *Casteel* v. *Casteel,* 45 N.J.Super. 338, 132 A.2d 529; *Commonwealth ex rel. Rogers* v. *Daven,* 298 Pa. 416, 148 Atl. 524.

home and business after their arrival in Hawaii and are carrying on this business with apparent success, that the two children attend a nursery on weekdays while she is working at the business and that the children are very close to and respectful of their stepfather, all provide a sound basis for denying, in the interests of the children and in consideration of their welfare, full faith and credit to the Oregon decrees.

Even under the general rule requiring "change of circumstances" we would have little hesitation in finding that the additional circumstances above enumerated which were not present nor considered in the determination of the Oregon court, would justify the denial of the petition for writ of habeas corpus. As pointed out in *Foster* v. *Foster*, 8 Cal.2d 719, 728, 68 P.2d 719, 723:

"We do not wish to be understood as holding that 'the change of circumstance' rule is an absolutely ironclad rule, and that there can be no possible exception to it. It is perhaps possible to conceive of a case in which, despite the fact that there was apparently no change of circumstances, nevertheless, the welfare of the child might require that the previous order of custody be changed. * * * It is also possible to conceive of some theoretical case in which some fact, secret and hidden at the time of the entry of the former judgment, would in the interest of the welfare of the child, justify a court in modifying the former order of custody despite the fact that there had been no actual change of circumstances since the entry of the former order."

The rationale of the "change of circumstance" rule is clearly the undesirability of relitigating matters already duly considered by a court of competent jurisdiction. It is not so much the circumstances that have arisen since the date of the prior adjudication as it is the circumstances that were considered by the court in making such adjudication.

Here it is apparent from the record in the Oregon court that the matters above outlined were not presented nor considered by that court in making its final custody order. Even the fact of the change of domicile had not been established by competent evidence before that tribunal. The court in Oregon heard at the hearing on the motion to modify only those facts that branded respondent a wrongdoer in the eyes of the court. This punitive action on the part of the Oregon court in changing its original order of custody cannot be regarded as governing the welfare of the children who should not be bound by or responsible for the wrongdoing of their mother.

While Oregon itself follows the "change of circumstance" rule, the court in *Gonyea* v. *Gonyea,* 232 Or. 367, 370, 372, 375 P.2d 808, 810, in requiring "evidence which shows a change in the circumstances which occurred since the decree was rendered, or, in the alternative, [which shows] the existence of *some material fact which was unknown* at the time of the decree" (emphasis added), minimized the degree of changed circumstances necessary in its flexible application of that rule to advance the welfare of the children:

"* * * There is no constant or standard quantity of change which will qualify. The amount of change necessary to justify a modification of a decree varies with the facts of the individual case. * * * As we have already stated, pre-eminence is given to the interests of the children."

With this expression of the attitude of the courts of Oregon we feel that there would be no hesitation by those courts to reach the same conclusion as we have. While the Supreme Court of the United States has not unequivocally decided this question of the full faith and credit to be given to custody decrees of sister states, that Court in *New York ex rel. Halvey* v. *Halvey, supra,* 330 U.S. 610,

614, affirming a New York order which had modified a Florida custody award denied violation of the full faith and credit clause on the narrow ground that Florida law would have permitted this modification and "what Florida could do * * *, New York may do." The Court there stated that the court of the forum has at least as much leeway to disregard the custody award, to qualify it or to depart from it as does the state where it was rendered. 330 U.S. 615.

Consequently, the trial court here was justified in awarding the custody of these children to the respondent (mother) as the Oregon Supreme Court, in view of the circumstances above enumerated, which had not been passed upon or even considered by the Circuit Court of Oregon in rendering its final amended custody award, would, we believe, have undoubtedly permitted such modification of the decree on the basis of circumstances not considered at the time of its rendition.

Appellant cannot now complain that he did not receive his "day in court." As the record of the Circuit Court of the First Circuit indicates the trial judge in his decision and order denying the motion for summary judgment expressly ordered: "The pending order to show cause will remain pending and this Court, upon appropriate representations by counsel for the father, will grant to him as full and complete a hearing on the issue of the best interests of the children as he may desire." Despite this, petitioner through his attorney, requested that the case be "submitted on the general issue (as opposed to the motion for Summary Judgment) * * *," and declined to present any evidence on the issue of the welfare and best interests of the children. There is no question that he had notice and opportunity to be heard on this issue and had his "day in court."

It is not clear whether counsel for petitioner, in his

motion to strike the allegation in respondent's return to the petition for habeas corpus "that petitioner is not a fit or proper person to have the care, custody or control of said minor children; and that it would not be for the best interests of said children to be placed in the custody of petitioner" and for summary judgment, proceeded on the theory that the facts in the case did not present adequate "change of circumstances" for application of that rule to the case or that a habeas corpus proceeding could not go into the merits of the question of custody. In view of this, having covered the question of "change of circumstances" it should be pointed out that the weight of authority supports the proposition that in a habeas corpus proceeding involving the custody of children within its territorial confines, the forum court can look into the merits of the question of custody, and issue an award of custody according to the best interests of the children. *Pukas* v. *Pukas,* 129 W.Va. 765, 42 S.E.2d 11; *Turner* v. *Dodge,* 212 Ark. 991, 208 S.W.2d 467; *Scott* v. *Scott,* 227 Ind. 396, 86 N.E.2d 533; *Ex parte Bush,* 240 Mich. 376; *People ex rel. Turk* v. *Turk,* 86 N.Y.S.2d 139; *Carrere* v. *Prunty,* (Ia.), 133 N.W.2d 692; *Ex parte Miller,* 201 Okla. 499, 207 P.2d 290.

In the case of *In re Herlihy,* 33 Haw. 106, 107, this court, noting that the welfare and the best interests of the children are predominant, affirmed the lower court's consideration of evidence on the question of the parent's fitness in granting the father custody in a habeas corpus proceeding instituted by the child's grandparents. And see *In re Kaelemakule,* 32 Haw. 731.

The issue of the merits of the custody of these children, involving their welfare and best interests, was clearly raised by the respondent's allegation which is quoted above and which petitioner by motion was unable to strike. The issue thus joined clearly permitted the lower court to

issue its award according to its determination of the best interests of the children.

In view of the foregoing we can reach no other conclusion but that the order appealed from be affirmed, dismissing the petition for writ of habeas corpus and awarding the custody of the minor children of the parties to the respondent.

*E. D. Crumpacker* (*Naomi S. Campbell* with him on the briefs, *Crumpacker & Sterry* of counsel) for petitioner-appellant.

*Louis A. Rodrigues* for respondent-appellee.

---

DISSENTING OPINION OF LEWIS, J.

As the court holds, *New York ex rel. Halvey* v. *Halvey,* 330 U.S. 610, is applicable authority. Under Oregon law, as under the law of Florida involved in *Halvey,* a custody decree is not conclusive of facts which were not presented or considered at the hearing preceding such decree. The Oregon rule, as stated in *Gonyea* v. *Gonyea,* 232 Or. 367, 375 P.2d 808, 809-10, permits modification of a custody decree not only on the basis of a change in the circumstances which occurred since the decree was rendered, but also because of "the existence of some material fact which was unknown at the time of the decree." Therefore, under the authority of *Halvey,* the Oregon decree of May 5, 1964 was not res judicata "except as to the facts before the court at the time of judgment." (330 U.S. at 613). I agree with the court's conclusion in this case that the court below was justified in considering the evidence as to the successful remarriage of the mother and the life of the mother and children in Hawaii, which the Oregon court did not have before it. As in *Halvey* it is immaterial that the dearth of evidence as to these circumstances in the

Oregon court was due to the respondent's failure to present it. The interests of the children are paramount.

However, the court below received evidence as to the unfitness of petitioner as a father which may have been presented by respondent in the Oregon court when she testified in May, 1963. The decision rendered herein by the court below does not show whether this evidence influenced the decision to any material degree. Mindful of the Supreme Court's action in *Kovacs* v. *Brewer*, 356 U.S. 604, I would vacate the order appealed from and remand for clarification.